### CLAPP vs. WEBB.

*August 31 — September 27, 1881.*

*Statute of Frauds.*

The mere fact that an advantage may incidentally result to the promisor from his oral promise to pay the debt of another, is not sufficient to take it out of the statute of frauds, but there must be other evidence that such advantage was the *object* or *consideration* of the promise.

APPEAL from the Circuit Court for *St. Croix* County.

The complaint alleges that between September 1, 1875, and May 1, 1876, one Harrington was engaged in cutting, hauling and banking certain pine saw-logs, of which the defendant was the owner; that between the same dates the plaintiff furnished feed for the horses employed in that business, and performed labor and services in and about the cutting, etc., of such logs, to the amount and value in all of $300, which sum was found due him therefor on an accounting between him and Harrington had in April, 1876; and that Harrington thereupon gave plaintiff a written order on the defendant for that sum. The cause of action is thus further stated in the com-

plaint: "Thereafter, and before the first day of June, A. D. 1876, this plaintiff presented said order to said defendant, and requested said defendant to pay the same; and said defendant did then promise and agree to and with this plaintiff that he, the said defendant, would pay this plaintiff the said sum of $300; and this plaintiff, relying solely upon said promise and agreement of said defendant to pay, as aforesaid, allowed the time in which this plaintiff might have filed a petition for a lien on said logs for said debt to run out and expire." Judgment is demanded for $300, interest and costs. The defendant answered a general denial.

The testimony introduced on the trial tends to show that a portion of the logs described in the complaint were cut by Harrington, by virtue of a permit in writing from one Humbird, who owned the land upon which they were cut; that the permit was assigned by Harrington to the defendant, as collateral security for advances made and supplies furnished by the latter to Harrington on account of such logs, and perhaps, also, for a preëxisting debt; and that the logs were sold June 15, 1876, and the defendant received the proceeds of the sale; but it does not appear that any such proceeds remained after paying the indebtedness of Harrington to the defendant. The testimony also tends to prove the allegations of the complaint in respect to the indebtedness of Harrington to the plaintiff, the accounting, and the giving of the order for $300 on the defendant by Harrington. The testimony of the alleged promise of the defendant to pay Harrington's indebtedness to the plaintiff was given by Harrington, and is as follows: "*Mr. Clapp* requested me to see *Mr. Webb* in regard to the amount of his order, and tell him that if he was hard up for money he would wait on him till fall, if he would give him a note. I met *Mr. Webb* and did the errand, and I think the answer he gave me was, 'All right,' or something to that effect. I told *Mr. Clapp*. He made out a blank note, and I brought it down here for *Mr. Webb* to sign, and went to him, but did

not see him. I went back home and sent it to him by mail, and I never saw it afterwards. This conversation with *Mr. Webb* was in May, about the time he was finishing the drive. It was up in the backwater here. I sent the note in the letter before the first day of June. I think I carried the note a few days before I was down, and when I went back I think I sent it right back to him. I am quite sure it was in May. I put the letter in the post-office, addressed to *John E. Webb,* Hudson." The defendant testified, denying the above conversation, and denying, also, the receipt of the letter mentioned by Harrington. There is no proof of any interview between plaintiff and defendant, or any negotiations between them, directly or indirectly, in respect to the plaintiff's demand against Harrington, at any time before June 1, 1876, other than is contained in the testimony of Harrington, above quoted.

The charge of the judge to the jury is sufficiently stated in the opinion. The verdict was for the plaintiff for the amount of his claim; a motion for a new trial was denied; and from a judgment for the plaintiff entered pursuant to the verdict, the defendant appealed.

For the appellant there was a brief by *John W. Bashford* and *L. P. Wetherby,* his attorneys, with *R. M. Bashford,* of counsel, and oral argument by *R. M. Bashford.*

For the respondent there was a brief by *N. H. & M. E. Clapp,* and oral argument by *N. H. Clapp.*

Lyon, J. Assuming that the defendant promised orally, in May, 1876, to pay the indebtedness of Harrington to the plaintiff, and assuming also that the plaintiff could have enforced a lien upon the logs mentioned in the complaint, to the amount of such debt, at any time before the first of June following, the question to be determined is, whether such oral promise is void by the statute of frauds. The learned circuit judge refused to instruct the jury that such promise is void under the statute, and instructed them as follows: " If you find

from the evidence that the defendant, in order to protect his interest in the logs, and to induce the plaintiff to forbear a prosecution of his claim against the logs, promised to pay this claim, and the plaintiff, relying upon such promise, did so forbear to prosecute, you shall find for plaintiff." The statute provides that "every special promise to answer for the debt, default or miscarriage of another person" shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party charged therewith. R. S., 654, sec. 2307; Tay. Stats., 1255, § 2.

Under repeated decisions of this court, the alleged promise is within the statute of frauds unless it was founded "upon a new and independent consideration passing between the newly-contracting parties, and independent of the original contract." *Emerick v. Sanders*, 1 Wis., 77. In *Dyer v. Gibson*, 16 Wis., 557, the rule is laid down, that "the promise of one person, though in form to answer for the still subsisting debt of another, if founded upon a new and sufficient consideration moving from the creditor and promisee to the promisor, and beneficial to the latter," is not within the statute; and DIXON, C. J., proceeds to say that "the distinction is between cases where the person promising has for his object a benefit accruing to himself, in which the original debtor has no interest, and from which he derives no advantage, and cases where his primary and leading object is to become surety for the debt of another without benefit to himself, but for the exclusive advantage of the other parties to the contract." Page 370. In *Young v. French*, 35 Wis., 116, the present chief justice states the distinction thus: "Where the party promising has for his object some benefit and advantage accruing to himself, and on that consideration makes the promise, this distinguishes the case of an original undertaking from one within the statute."

In the present case we have assumed that at any time before June 1, 1876, the plaintiff might successfully have commenced.

proceedings, and enforced a lien upon the logs for the amount of his claim against Harrington. If he could have done so, it is obvious that it was to the benefit and advantage of the defendant that the plaintiff should not enforce his right to such lien. But the mere fact that an advantage may result incidentally to the promisor is not alone sufficient to take the agreement out of the statute. The resulting advantage to him must be the *object* of his promise — the *consideration* upon which it was made. We are not aware of the existence of any rule of law which authorizes the inference that, merely because the promisor may be incidentally benefited by his promise, his object in making it, and the consideration therefor, is such incidental benefit. Herein lies the infirmity of the plaintiff's case. There is no evidence tending to show either that the plaintiff, when he offered to wait until fall for payment of Harrington's debt, provided the defendant would give his note therefor, or that the defendant, when he made the alleged promise to pay the debt in the fall, did so with reference to the plaintiff's right to enforce a lien on the logs. It does not appear that such right was mentioned in any conversation between the plaintiff and Harrington or between the latter and the defendant, or that it influenced the action of or was even thought of by either party until after the right to a lien had expired. Moreover, the complaint alleges nothing to the contrary. It merely states that the plaintiff relied upon the promise of the defendant, and allowed his right to enforce a lien to expire by lapse of time. It is not alleged that the loss of his lien was the consideration for the defendant's promise to pay Harrington's debt.

In this condition of the pleadings and evidence, it is impossible to hold that the object of and consideration for the alleged promise of the defendant was that the plaintiff should not enforce a lien on the logs. The oral promise is an undertaking to answer for the debt of another, and there is no proof tending to show the existence of any fact which takes it out

of the statute. It is therefore void. The learned circuit judge should have so instructed the jury, as requested on behalf of the defendant. It was also error to submit to the jury, as a question of fact, whether the defendant made the alleged promise "in order to protect his interest in the logs and to induce the plaintiff to forbear a prosecution of his claim against the logs," there being no evidence upon which to predicate the instruction.

It appears that the parties had an interview, after June 1, 1876, concerning Harrington's debt. The plaintiff testified that in that interview the defendant promised to pay the debt the next fall if he had anything to pay with, but refused to give his note therefor. The defendant denied that he made such promise. It is unnecessary to consider the effect of this testimony further than to say that the conversation occurred after the plaintiff's right to a lien had expired by lapse of time (Tay. Stats., 1769, § 27); and it is not claimed that there was any other consideration for such alleged promise.

The view we have taken of the case renders it unnecessary to consider other questions raised by the exceptions and argued by the learned counsel.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.