### SANDERS v. BARLOW and others.

*(Circuit Court, D. Colorado.   October 14, 1884.)*

1. CHATTEL MORTGAGE — VALIDITY OF, WHEN UNRECORDED, AS AGAINST GENERAL CREDITORS OF AN ESTATE.

    A mortgage which is good against the deceased is also good against his administrator and the creditors. The rule as laid down in the case of *Stewart* v. *Platt*, 101 U. S. 731, governs.

2. SAME — EFFECT OF WRITTEN GUARANTY OF ONE MORTGAGEE TO ANOTHER.

    Where two mortgagees stand on equal footing, and are to be paid out of the same fund, the promise in writing of one mortgagee that he will see the other paid, postpones the mortgage of the former and gives priority to the latter.

3. STATUTE OF FRAUDS — CONSIDERATION NEED NOT BE EXPRESSED — FORBEARANCE A CONSIDERATION.

    Under the statute of frauds, where a promise in writing is made to pay whatever one party owes another, it is binding, though no consideration be expressed. Forbearance to enforce a debt is sufficient consideration moving to such a promise.

In Equity.

*Wells, Smith & Macon,* for complainant.

*H. C. Dillon,* for defendants.

Before BREWER and HALLETT, JJ.

HALLETT, J., *(orally.)*   A bill has been filed by Minnie Sanders against James H. Barlow and others, to enforce a lien on a certain fund in the hands of the surviving partner and administrator of Samuel M. Sanders, deceased, arising from a chattel mortgage given by Sanders, in his life-time, to one F. H. Mather, and by said Mather assigned to the plaintiff. The plaintiff was the wife of said S. M. San-

ders. This mortgage was executed to M. Mather on the twenty-sixth day of April, 1880, to secure a loan, as it is said, of the wife's money to her husband. Mr. Sanders was in partnership with Mr. Aux in keeping a livery-stable, and the mortgage was given upon his interest in that business. Four days later, on the first of May, Mr. Sanders gave another mortgage to William S. Jackson on the same property, to secure a loan previously made by Jackson to him. The plaintiff's mortgage was not recorded until after Mr. Sanders' death. Mr. Jackson's mortgage was never recorded. The bill is against Barlow, Sanders' administrator; Aux, the surviving partner; Minnie Bell and Bessie Elizabeth Sanders, children of Mr. Sanders; and Jackson, the other mortgagee. Some question was made upon the original bill, by demurrer thereto, before Mr. Jackson was made a party to the suit, as to the effect of this mortgage; whether it could be asserted against the rights of the general creditors of the estate, not having been put on record during the life-time of Mr. Sanders, nor until after the debt from him to the plaintiff had become due. It should be remarked, also, while the plaintiff's debt was overdue a month or more at the time of Mr. Sanders' death, and before the mortgage was recorded, some part of Mr. Jackson's debt had also become due prior to that time, but not the whole of it, I believe. Upon that question, as to the validity of the mortgage against the general creditors of the estate upon demurrer to the original bill, it was thought that the case of *Stewart* v. *Platt*, 101 U. S. 731, would control; and according to the doctrine of that case, the mortgage, being good against the deceased, was good also against his administrator and the creditors. This point was raised again here in argument on the final hearing, but it is not considered necessary to go over the authorities again on this subject. Undoubtedly a different rule is laid down in some cases in the supreme court, and certainly it is in some of the courts of the states. But this is the latest case, and we are to follow the last one, whatever it may be.

Upon this hearing another question has arisen between these mortgagees. Assuming the general rule that the first in time shall be the first in right, and that these mortgages stand upon an equal footing otherwise, the question has arisen as to whether a certain paper, executed by Mrs. Sanders during her husband's last illness, shall be sufficient to give priority to Mr. Jackson's mortgage. This letter bears date September 29, 1880, and is addressed to William S. Jackson, and is as follows:

"DEAR SIR: Mr. Sanders is too sick to attend to business, and I wish to say that I will be responsible for whatever he owes you or the El Paso County Bank, and see that the same is paid.

[Signed]                                    "MRS. S. M. SANDERS."

As to the circumstances under which this paper was given, it seems from the testimony of Mr. Barlow and Mr. Jackson, who are the only ones who speak of it, that Mrs. Sanders came to the bank, in which

Mr. Jackson is interested, and expressed a desire to see Mr. Jackson with reference to the indebtedness of Mr. Sanders to the bank. Mr. Jackson was informed of this soon afterwards, within an hour or so perhaps, when he came to the bank, but he was not in just at the moment she called. Upon receiving this information from Mr. Barlow, Mr. Jackson said that he would be satisfied if Mrs. Sanders would give her written obligation to become responsible for the money due to him. Mr. Barlow proceeded to his own house, where he soon after met Mrs. Sanders. It seems there was some understanding between them that they should meet there, and she was informed of Mr. Jackson's wishes in the premises when she wrote this note. Whether it was in consequence of any step taken by Mr. Jackson towards foreclosing the mortgage, or taking possession of the property with the view to secure his claim and collect his debt, does not appear, except that Mr. Jackson states that he was about to proceed in that way. And Mr. Barlow also says that Mr. Jackson was moving in the matter. So far as Mrs. Sanders' action in the premises is concerned, it would seem that she was acting by her husband's request: that he had become anxious in the matter. This is Mr. Barlow's testimony:

"I know that Mrs. Sanders sent word to the bank to see Mr. Jackson and myself in regard to the amount that Mr. Sanders owed Mr. Jackson, and would like to see one of us, and I went to see Mrs. Sanders, who was then at my house, and she stated to me that Mr. Sanders was very nervous over his indebtedness to Mr. Jackson, and that every one coming in he would inquire if that was Mr. Jackson. She stated to me that she would see this indebtedness paid; that she had ample means to make it good. She then asked me to see Mr. Jackson, and see what would be satisfactory. Mr. Jackson's mortgage was then due, and he was moving to take possession of the property, or get a new mortgage to secure it, and Mrs. Sanders said her husband was too sick to attend to business. I then saw Mr. Jackson, and he said that if Mrs. Sanders would write him to that effect, in writing, that he would be content. I told Mrs. Sanders what Mr. Jackson said, and she said that that was what she wanted to do, and did write a letter to that effect, saying she would see the claim paid."

Mr. Jackson said:

"After she had first sent me word that I could not see Mr. Sanders because he was too sick, but that she would see me paid, I then asked Mr. Barlow to have her put it in writing, which she did. She was the first one who suggested that she would see me paid; otherwise, I should proceed to take possession of the property under my chattel mortgage."

The plaintiff was not examined upon this question as to the circumstances under which this paper was given, and so there is nothing in the record on the subject except the statement of these two witnesses. Now, if this is to be regarded as a valid agreement, made upon sufficient consideration,—a forbearance by Jackson to sue, or to press his claim against the personal property,—it seems to me that the effect of it would be to postpone the plaintiff's mortgage to that of the defendant Jackson; because, if two persons have a claim upon the same fund in respect to demands of equal dignity, and one of

them is liable to the other for the payment of the same demand, I should say that he who is liable for the ultimate payment of the money would be postponed to the other. At the argument I suggested that there would be some difficulty about this writing, and counsel said that if so it must be as an estoppel on the part of this woman to assert any claim under her mortgage; and it seemed to me so then. But upon looking at the matter more closely, considering the fact that she does not seek to avoid her promise in any way, that there is nothing to show that she then knew of the Jackson mortgage, or had any knowledge of it, and consequently she could not know that she was postponing this demand upon that property, I should say that it lacks the essential elements of an estoppel. In so far as Jackson may have been misled to his prejudice by her promise to pay, there may be one element of estoppel, but the others seem to be wanting. Aside from any question of estoppel, assuming that there is nothing in the nature of deceit in any of these transactions, if there be a valid promise from the plaintiff to the defendant Jackson to pay his debt, it must be that he has a prior right to recover from this fund. It is said that the fund is hardly sufficient to pay one of these parties, not both. If that be true, there cannot be much propriety in allowing her to take the fund in the first instance, to be subject to another action upon this agreement, on the part of Jackson, to recover it. But in that respect the agreement is not well pleaded in the answer. *First*, it occurred to me that it might, perhaps, be necessary for Mr. Jackson to file a cross-bill to assert his claim to the fund. But of that I have some doubt. It would seem to be sufficient for him and the others to rely upon any valid claim that they may have to the fund, without seeking to assert here such a right to it as can be given by decree; and as to his ability to assert such a demand in this court against the surviving partner and the administrator, who are citizens of this state, as well as against the plaintiff, who is a citizen of another state, there may be some doubt. I do not see before me the joint answer of the defendants which was filed to the amended bill, but in that answer there is some mention of this paper,—a very slight one; but it is not sufficiently pleaded to establish it as a valid agreement between the parties. Of course, to make it such, it must be shown to have been given upon good consideration, and as a guaranty of the debt of another, and the facts in relation to it must be set up. There may be also some question as to whether the agreement is sufficient under the statute of frauds, as not expressing a consideration. But to that I have not given much attention, except to notice that in this clause of the statute of frauds there is nothing said as to the consideration, while in other clauses of the same statute it is provided that the consideration shall be expressed in the agreement; and I observe that in two cases in the supreme court of the United States such agreements were upheld, although the consideration was not expressed in them. But upon the

construction given to the statutes of frauds in the states from which they were removed,—that is, from Virginia and New York,—they are early cases; one in 6 Cranch, I believe, and the other in 1 Pet. It seems the supreme court of the United States follows the construction given in the courts of the state, and I am not aware that this question has been ruled on in the supreme court of this state. But I have arrived at the conclusion that to establish the ultimate rights of these parties, and prevent further controversy in respect to the matters involved, the defendant should be allowed to set up this agreement in their answer in a manner to establish it, if that can be done; and upon that the plaintiff may, if she sees proper, have an opportunity to give her testimony in respect to it; and the other parties can give further testimony upon that issue if they see proper. That I regard as now the only question in the case. If that should be determined for the plaintiff, she would be entitled to a decree; if against her, of course the bill must be dismissed.

.BREWER, J. In the case of *Sanders* v. *Barlow* the facts are these: Mr. Sanders, in his life-time, executed two chattel mortgages—one to the father of his wife, and one, a few days later, to Mr. Jackson; that to the father of his wife being transferred by him to Mrs. Sanders. Neither mortgage was placed on record or on file prior to the death of Mr. Sanders, yet, for the purposes of this case, both must be taken to have been given for value, and to have been valid as against the mortgagor and those claiming under him. Pending the last sickness of Mr. Sanders, and after the Jackson mortgage became due, Mrs. Sanders executed this paper. It it addressed to Mr. Jackson, and reads as follows: "DEAR SIR: Mr. Sanders is too sick to attend to business, and I wish to say that I will be responsible for whatever he owes you and the El Paso Co. Bank, and will see that the same is paid." And this is signed by her. The case was submitted on the testimony then taken to my brother Hallett, at the last term, I believe, who, finding both mortgages to be valid as against the mortgagor and those claiming under him, said that in reference to this paper the testimony and pleadings were not sufficiently full to determine whether the effect of this instrument was to subordinate the claims of Mrs. Sanders to this of Mr. Jackson,—that is, to postpone her mortgage to his,—and therefore directed some additional pleadings to be filed, and gave the parties leave to take additional testimony to explain the circumstances which attended the making of this letter, and such pleadings were filed and testimony taken. Mrs. Sanders denies ever giving the letter; but, comparing her signature to the deposition with the signature to the letter, there is very little reason to doubt but what she did sign the letter. Further than that, other testimony is to the effect that she did execute it, and it must be held that she did sign and send it. But, denying this, she gives no explanation of the circumstances under which it was writ-

ten. From the testimony of Mr. Jackson and Mr. Barlow it appears— and in some measure the testimony of Mr. Jackson is corroborated by that of Mr. Aux—that Mr. Jackson, after the maturity of the note secured by his mortgage, while taking no legal measures, having commenced no suit, yet went to the place where the stock mortgaged was, and took an inventory, and was preparing to institute proceedings. At this time Mr. Sanders was sick with what proved to be his final sickness, and Mrs. Sanders went to the bank to see Mr. Jackson, but not finding him in, told Mr. Barlow that Mr. Sanders was very much worried about his indebtedness to Mr. Jackson; that he was very nervous, and if any one called at the house he at once asked if it was Mr. Jackson; that he was too sick to attend to business, and she wanted to do something about it. He told her he would see Mr. Jackson and let him know. In this interview she said she was possessed of some means, and that whatever Mr. Sanders owed to Mr. Jackson she would pay. Mr. Barlow told Mr. Jackson of the interview, and he said it was all right if she would sign a paper or letter to that effect. He went to her and told her, and she was satisfied and executed this paper, and Mr. Jackson desisted from all further proceedings or effort to enforce his claim.

Now, the question is, whether the effect of this agreement postpones her claim to his. The validity of such an instrument under the statute of frauds has been carefully argued by counsel. It has been said that it is not valid under such statute for three reasons: *First*, the parties did not specify the amount of the promise, but it is a promise to pay whatever he owes you, and it is said that it is not valid because it leaves open to parol testimony the amount which the party promised to pay; and, *secondly*, that no consideration is expressed in the letter; and, *third*, that there was no consideration.

Reversing the order of these questions, we think there was a consideration. Forbearance to enforce a debt is a consideration for a promise. That Mr. Jackson might have taken legal means to enforce his right is unquestionable; but he forbore, and the act of forbearance is consideration for a promise.

*Secondly*, it is not necessary in a promise of this kind that the consideration should be named. The language of this section of the statute is, "any promise must be in writing;" not any agreement, as in some other portions, and as to which there have been wide differences of opinion in the decisions of courts for many years. So far as the first question is concerned, *i. e.*, as to the failure to state the sum which she promised to pay, my own judgment is that even as an obligation under the statute of frauds the contract would be good,—"whatever can be made certain is certain;" that whenever a party promises to pay whatever is owed by one to another, it is sufficient, although no sum is named. Just as a promise by one party to convey all the real estate he owns in a county is good as a contract, although it takes testimony to prove what that real estate is.

But it is not necessary to go so far as this in this instance, but it is only necessary to say that this is an agreement which, whether good or not under the statute of frauds, is binding so far as to postpone her rights to his, and it is plain to me that her claim should be postponed.

This is an equitable action, and I think it is enough to hold that, equitably, she is bound by that agreement. Generally, it is equitable that a party perform his promises; and it is inequitable that he be released from its obligations by reason of any mere technicality. So, it is equitable that she, having written this letter and made these promises, with knowledge of what it imported, cannot now be permitted to repudiate it. It is always a presumption that one making a promise like this to pay an indebtedness knows all that is included in that promise. But, further, we have the testimony of Mr. Barlow that she did know of the debt and mortgage; hence no question of misunderstanding or mistake arises, and equitably she is bound by this promise.

My conclusion, therefore, is that, equitably, she is bound by this letter, and that thereby she postponed her rights in the property to Mr. Jackson; and that, in accordance with the conclusion reached by Judge HALLETT in a prior opinion, the bill must be dismissed.