Hewett vs. Currier.

HEWETT, Respondent, vs. CURRIER, Appellant.

*May 4 — June 1, 1885.*

APPEAL FROM J. P. *(1) Judgment of dismissal for want of prosecution. (2) Conclusiveness of return.*

EVIDENCE. *(3) Acceptance of contract: Conclusion.*

LIENS: CONTRACTS: ESTOPPEL. *(4–7) Lien for materials: Conveyance of premises: Promise of payment: Consideration: Forbearance to enforce lien: Statute of frauds.*

1. An appeal will lie from a judgment of a justice dismissing the complaint for want of prosecution.
2. The return of a justice on an appeal, as to the appearance of the parties and the filing of the complaint, cannot be contradicted except by an amended return.
3. A witness being asked what he said in reference to accepting or rejecting a proposition, answered, "I think I accepted it readily enough." *Held*, that the answer was not objectionable as being a mere conclusion.

4. A conveyance of the title to land to a stranger after contracts for the erection of a house thereon are made, and the building commenced, will not defeat a lien for materials furnished in good faith at the request of the apparent owner, and which actually went into the construction of the building.

5. Forbearance by a subcontractor to file a claim for a lien to which he supposes himself entitled upon a building for which he has furnished materials, is a sufficient consideration for a promise by the owner to pay the amount due, although it afterwards appears that the promisee was not entitled to a lien.

6. If the owner, before making such promise, had conveyed the premises *with covenants of warranty,* the promise is equally valid; or, if he treated the property as his own while inducing the subcontractor to forego his lien, he will be estopped thereafter to deny that he was interested in the premises at the time of making such promise.

7. Such a promise is not within the statute of frauds.

APPEAL from the Circuit Court for *Clark* County.

Action to recover the purchase price of lumber alleged to have been furnished to the defendant. The facts are sufficiently stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

For the appellant there was a brief by *James O'Neill* and *B. F. French,* and oral argument by *Mr. O'Neill.* They contended, *inter alia,* that the appellant did not own the premises at the time of his alleged promise; that the relinquishment of the lien did not inure to his advantage; and that, therefore, his promise, if made, was void for want of consideration. Wood on Frauds, 196, 256, 260, 261; Reed on Frauds, secs. 131, 133; *Curtis v. Brown,* 5 Cush. 488; *Ames v. Foster,* 106 Mass. 400; *Cowenhoven v. Howell,* 36 N. J. Law, 323; *Clapp v. Webb,* 52 Wis. 641.

*R. J. MacBride,* for the respondent.

ORTON, J. The facts are substantially as follows: Long before the 28th day of June, 1881, the defendant bought the land and commenced improving it, and in the last of May or first of June he commenced building a dwelling-

house thereon, and contracted with one Calway either to build and complete it for the sum of $1,600, or employed said Calway to work upon said building and superintend the work of others, for $2.50 per day. As to which was the contract, Calway and the defendant were in direct conflict in their testimony on the trial; Calway asserting the latter and the defendant the former. The deed of the land was executed about the time the building was completed, to Sophronia Currier, the maiden sister of the defendant, about fifty years of age, who came to the state the fall before, but said deed was not recorded until February, 1882, and there is no proof that either Calway or the plaintiff had any notice of it before that time. Some time in June a bill of lumber for the building was purchased of the plaintiff, of $150, but as to who made the purchase, Calway or the defendant, they were also in conflict in their testimony. The defendant was present, however, when it was purchased, or knew about it, and Calway afterwards paid $90 on the lumber, of money he obtained from the defendant, when he informed him that the bill ought to be paid, according to the testimony of Calway, but which fact is denied by the defendant.

The building was completed, and, according to the testimony of the defendant, Calway had been fully paid, and Calway was pecuniarily irresponsible. In the fall of that year, one Chubb, who was the managing clerk of the plaintiff, was directed by the plaintiff to file a lien on the building for the balance of the bill. Chubb, before doing so, called on the defendant, and told him that he had been instructed to file a lien on the building for the plaintiff, and before doing so he thought he would speak to him about it; whereupon the defendant made the reply that if they would wait until after he got through with the trial of a suit then pending with Calway, he would pay the claim. After that suit was through with, Chubb called on the defendant

again, and he denied having any such conversation with him. These conversations Chubb reported to the plaintiff, and he assented to the arrangement. Chubb accepted the promise of the defendant to pay the claim on such condition, at the time it was made.

These facts about the promise are supported by the testimony of Chubb and denied by the defendant. No lien was ever filed or prosecuted by the plaintiff on the building. Special findings were submitted to the jury, and were answered as follows: "1. Did the witness Calway have authority from the defendant to purchase the lumber mentioned in the complaint from the plaintiff on the credit of the defendant? *Answer.* No. 2. Did the defendant promise the plaintiff's agent, Chubb, that he would pay the plaintiff for the lumber if the plaintiff would forbear to commence proceedings to enforce a mechanic's lien against the building on which the lumber had been used? *A.* Yes. 3. Did the defendant promise the plaintiff's agent, Chubb, that he would pay the plaintiff for the lumber without reference to whether the plaintiff should forbear to commence proceedings to enforce a mechanic's lien? *A.* No." The jury also found a general verdict for the plaintiff for $61.10.

There were two preliminary questions: (1) Whether the circuit court obtained jurisdiction on the appeal; and (2) whether the case was one for an original trial in the circuit court. It appears, from the return of the justice, that on the return day of the summons the case was called, and R. J. MacBride appeared for the plaintiff and filed a written complaint, and James O'Neill appeared for the defendant, and that, after waiting one hour, and the plaintiff not appearing and offering any proof to sustain the complaint, the justice rendered judgment against the plaintiff for the costs of the action, amounting to the sum of $2.04. Affidavits were presented to show that neither the plaintiff in person, nor Mr. MacBride for him, appeared as stated in the return of the justice, but that Mr. MacBride met the justice

in the street and handed to him said complaint. The return of the justice is conclusive on this point until amended by a further return showing that there was no appearance, or filing of the complaint, at the hour fixed. Sec. 3763, R. S. The authorities cited by the learned counsel of the respondent show this to be the rule.

It is contended by the learned counsel of the appellant that an appeal will not lie from such a judgment dismissing the complaint for want of prosecution. The record does not show the reason why the plaintiff did not appear within the hour to offer his proofs, so that it cannot be said that this judgment is equivalent to a voluntary nonsuit or discontinuance. We know of no reason and have been cited to no authority why the plaintiff may not appeal from a judgment so rendered. The language of the statute (sec. 3753, R. S.) is that " any party to a final judgment rendered by a justice of the peace . . . may appeal therefrom to the circuit court," etc. There is no exception in the statute, and we can make none. This is clearly a *final judgment* against the plaintiff in the action, and therefore appealable.

The plaintiff, at the time of the appeal, made an affidavit that he had a valid claim against the defendant, as set forth in his complaint, exceeding the sum of $15, according to subd. 2, sec. 3768, R. S., so as to give him the right to a trial *de novo* in the circuit court. The learned counsel of the appellant objected to such a trial, and demanded that the cause be heard on the record, on the ground that when such affidavit was made no complaint had been filed, which the statute clearly implies. But this point is already disposed of by the record return of the justice, that the plaintiff, at the proper hour on the return day, appeared and filed his complaint, and such complaint constituted a part of the record returned to the circuit court. This is conclusive that there was a complaint filed.

The only exception to evidence offered by the plaintiff,

and relied upon in the brief of the appellant's counsel, is to the answer to the question, "When *Mr. Currier* told you that, what did you say to *Currier* in reference to accepting or rejecting his proposition?" And the witness answered, "I think I accepted it readily enough." This answer was objected to, because it was a conclusion of the witness. But no motion was made to strike it out. Was it any more a conclusion than if the witness had said, "I said to him that I accepted it, or that I assented to it"? The acceptance of the proposition, or assent to it, involves but a single expressed operation of the mind, as, I accept, or I consent, and may well be stated as a fact. If a question was, "What was said by you as to refusing an offer?" would the answer, "I refused," be a mere conclusion? The defendant's counsel could have asked for a statement by the witness of what he said in accepting it, or about accepting it, if he was not satisfied with the answer. But it was immaterial, for the witness had already answered that the *plaintiff himself accepted* the proposition, and this was not responsive to the question asked, whether the witness Chubb reported to the plaintiff his conversation with the defendant, which question was objected to, and the defendant's counsel did not move to strike out that answer or object to it.

The complaint alleged (1) that the defendant bought the lumber, and was therefore liable to pay for it; and (2) that he promised to pay the plaintiff's demand if he would forbear the filing of a mechanic's lien on the building for it. The first cause of action was virtually negatived by the jury, and the second was sustained. The judgment must therefore stand, if at all, on the second finding. It is contended by the learned counsel of the appellant that this finding is not sustained by the evidence. Without reviewing the evidence on that point further than the above statement of it, we are satisfied that the testimony of the witness Chubb as to that promise of the defendant fully sustains

it. The important question is, however, whether that finding entitled the plaintiff to a judgment without the further finding, or without uncontradicted evidence, that the defendant owned the house when it was built, and that the plaintiff had a valid and subsisting lien upon it for his claim for lumber that entered into its construction. As to whether the defendant owned the property there can be but little doubt. He testified that he bought the land and improved it, and the deed was not made to his sister until after the building was commenced, and when the plaintiff and others furnished materials for the building they evidently did not know but what the defendant still owned it. Such a conveyance of the title to a stranger after the contracts were made and the building commenced, could hardly defeat a mechanic's lien for materials honestly and in good faith furnished at the request of the apparent owner, and which actually went into the construction of the building. The first finding was substantially that the defendant did not contract the debt, and did not authorize Calway to buy the lumber. This finding would make the debt Calway's debt, and not the defendant's. If, therefore, the plaintiff had any lien on the building, it was that of subcontractor, and it is claimed that it was rendered invalid at the time of the alleged promise of the defendant to pay the claim by failure to give the proper notice to the owner of the building in time, and by the fact that the defendant had already paid, as he testified, the full contract price of the building to Calway.

This condition of things raises the following important question: Was such promise of the defendant to the plaintiff, made under such circumstances, supported by a sufficient consideration? It was not at that time ascertained whether the defendant owed Calway anything or not, for he had a suit pending with him concerning it; and it had not then been ascertained whether he was not personally

liable for the claim of the plaintiff.   In that interview with Chubb, the agent of the plaintiff, when he promised to pay the claim, he did not deny or question that the plaintiff had a valid lien on the building for it.   When asked to pay it, he only asked and stipulated for time; and when threatened with a lien upon the building, he only asked that it be not filed or enforced.   Is it unreasonable to say that he was, at least, in doubt whether the plaintiff had a valid lien or not, and that he made the promise and asked for the surrender of the lien on the supposition that it was valid?   But it is very clear that the plaintiff honestly believed and supposed that he had a valid lien, and that he intended to enforce it, and would have filed and attempted to enforce it, if the defendant had not promised to pay the claim.

The contention of the learned counsel of the appellant is that, if the plaintiff had no valid lien upon the building, there was no consideration for the promise to pay the claim; and this contention is enforced with great ability and much plausibility.   But I am unable to see that this precise question is not decided in *Young v. French*, 35 Wis. 111, and that this case is not ruled by that.   In that case it was assumed that it was a benefit and advantage to the promisor to have the lien forborne and not enforced upon the logs in his possession, and such was consideration enough to support the promise.   So, here, the filing of this mechanic's lien upon the building as an incumbrance, and its attempted enforcement in court, involving him in the expense and trouble of at least a doubtful litigation, would have damaged the defendant and caused him to suffer pecuniary loss. To avoid these consequences was certainly of great benefit and advantage to him.   It was claimed in that case that the promisee had no valid lien to forbear, but the present chief justice said in his opinion: " But it is unimportant whether the plaintiff in fact had a valid lien or not.   The defendant treated with him on the assumption that he had

such a lien, and chose rather to buy him off than to contest its validity." The only reason given by the learned counsel of the appellant why that case is not authority in this, is that the defendant in this case had no interest in the property. But he had an interest, as we have seen, in discharging it from such a lien, even if about that time he had deeded it to his sister; for the presumption is that there were covenants against incumbrances. Besides this, there was scarcely evidence sufficient, by the defendant's own testimony and the deed itself, to make it certain he did not own the property notwithstanding the deed. There being no change of possession or proof of consideration, and the defendant himself having caused the deed to be executed to his sister, so far as appears, without her knowledge or consent, and the deed never having been delivered except to an attorney at law for her, are circumstances of suspicion which make it at least very questionable whether the property did not belong to the defendant when the promise was made. He, at least *sub silentio*, treated it as his own when he bargained with the plaintiff to release his lien upon it, and should now be estopped from saying that the property was not his, after inducing the plaintiff to forego his lien upon it, upon the assumption that it was.

In *Griswold v. Wright*, 61 Wis. 195, it is said, by Mr. Justice CASSODAY: "The compromise of a doubtful claim is a good consideration of a promise to pay money, and it is no answer to an action brought upon such promise, to show that the claim was invalid;" and the following cases are cited by him to sustain this doctrine: *Crans v. Hunter*, 28 N. Y. 389; *McKinley v. Watkins*, 13 Ill. 140; *Draper v. Owsley*, 57 Am. Dec. 218. The same principle is sanctioned in respect to the compromise of doubtful claims and a promise to pay, in *Kercheval v. Doty*, 31 Wis. 476. In *Cook v. Wright*, 1 Best & S. 559; *S. C.* 30 Law J. Q. B. 321, work had been done in paving streets, and the expense charged

to the abutting lots, according to the provisions of an act of Parliament; and, in an interview between the defendant, who was only the agent of the nonresident owners of the lots, and the commissioners, he objected both to the amount and nature of the charges, and denied that he was the owner of the lots, and stated who was. He was told that if he did not pay, legal proceedings would be taken against him, and thereupon he promised to pay a less amount than the claim. It was said, in the opinion by BLACKBURN, Justice: "It appeared on the evidence that he [the defendant] believed himself not to be liable, but he knew that the plaintiffs thought him liable, and would sue him if he did not pay; and, in order to avoid the expense and trouble of legal proceedings against himself, he agreed to compromise;" and it was held that there was sufficient consideration to support the promise. The case of *Callisher v. Bischoffsheim*, L. R. 5 Q. B. 449, is closely in point with this case, for the agreement or consideration was that legal proceedings should be postponed. It appeared afterwards that the claim against the defendant was wholly unfounded.

That such a promise is not within the statute of frauds has been held by this court in *Weisel v. Spence*, 59 Wis. 301, and in many other cases, and is well established by authority elsewhere. See on this question, as well as on the above question also, *Cowenhoven v. Howell*, 36 N. J. Law, 323; *Train v. Gold*, 5 Pick. 380; *Hubbard v. Coolidge*, 1 Met. 84; *Alger v. Scoville*, 1 Gray, 391; *Walker v. Penniman*, 8 Gray, 233; *Wood v. Corcoran*, 1 Allen, 405; *Wills v. Brown*, 118 Mass. 137; *Hoppock v. Wicker*, 4 Biss. 469, affirmed in 6 Wall. 94; *Townsley v. Sumrall*, 2 Pet. 170.

The cases cited by the learned counsel of the appellant are very different in their facts, and not applicable. The plaintiff asserted his claim against the defendant in perfect good faith; and, relying on his promise to pay it, forebore filing and prosecuting his lien on the buildin which he

honestly believed he held. This case is stronger and clearer than most similar cases for the application of the principle.

I have treated the various questions raised more at length on account of the ability and zeal of the able counsel on the argument, and I have availed myself of the authorities cited in the briefs in most part. The case is an interesting one and the principles important, although the amount in controversy is small.

*By the Court.*— The judgment of the circuit court is affirmed.