BROOKS, Respondent, vs. WAGE, Appellant.

*March 27 — April 11, 1893.*

*Bills and notes: Consideration: Compromise of doubtful claim.*

Where a claim to a future contingent interest in land was made in good faith, based upon the terms of a will, a release thereof was a sufficient consideration for a promissory note given therefor by one who, while denying such claim, chose to compromise it; and in the absence of fraud or undue advantage it is immaterial whether such claim was in fact well founded or not.

APPEAL from the Circuit Court for *Clark* County.

Action upon a promissory note for $100, given by defendant to Henry D. Brooks, June 2, 1887, and indorsed to plaintiff. The answer alleged that the note was given in consideration of the execution of a quitclaim deed by the payee of his interest in an eighty-acre tract of land, and that in fact the payee had no interest or title in the land, and that plaintiff purchased the note after due, with notice of the lack of consideration therefor.

The facts were not materially in dispute. It appeared on the trial that the land in question was owned by one John D. Wage, who died August 26, 1867, leaving a will containing the following disposition of his property: " After the payment of my just debts and funeral expenses, I give, devise, and bequeath to my beloved wife, Susannah Wage, all my real and personal property, for her use so long as she remains my widow; then what remains after her death or marriage is to go to my son, *Davis Thomas Wage*, if he be living; if he be not living, then the same to be divided equally between the heirs of my son-in-law, *George Brooks.*" *Davis Thomas Wage*, named in the will, is the defendant in this action, and *George Brooks* is the plaintiff. Susannah Wage, the widow, survived until April 25, 1891. At the time of the death of John D. Wage, *George W. Brooks*

had three children living,— Henry (the payee of this note), Cora, and Effie.   At the time the deed was made and the note in suit given *Brooks* had four children living,— Henry, Cora (both of age), and two minor children.   Effie died seven or eight years before the trial.

In the spring of 1887 there seems to have been a desire on the part of all parties to sell the farm, and defendant testified as follows as to the negotiations: "This plaintiff, *George Brooks*, my brother-in-law, came to me and wanted me to buy him out, and I told him I did not know as he had anything to sell out, but he claimed he did, and that he would take five hundred dollars for it.   I told him I would not give it, but that, if he could prove to me that he had anything to sell, I would buy him out if I could.   He said to me that Mr. Grow had told him so.   I told him I would come to town with him, and we would see Mr. Grow; and I came to town with him, and we went in and talked with Mr. Grow, and first Mr. Grow said he did not know as they did have any interest, and that afterwards he said they might have an interest in it,— that is, the children.   So, I told him, if they could fix it so it would be all right, I would give the notes, as I supposed they had an interest in it.   *Mr. Brooks*, the plaintiff, was doing business for the children at that time.   That is all there was.   I gave the notes, and got nothing in return for them except they gave me a deed — a special deed, as they claimed it was — of their interest.   At this time there were two, I think, of the Brooks children of age, and the other two, one of whom is now dead, were minors.   I think *George Brooks* was their special guardian at that time.   I got a deed from Henry and Cora, and a deed from the special guardian for the other two.   I think that is all.   I think the deeds from Henry and Cora were separate deeds.   This was not the only note given.   I think I gave two or three other notes, I do not know which; I think only two,— one for $100 to

Cora, and one for $200 to the two minor children.  I gave each one of them $100, or, rather, my note for $100."

Upon his cross-examination he said: "And you purchased these deeds in the manner you have stated: they claiming they had an interest, and you claiming they did not have, you finally agreed to give a promissory note for $100 for each of the children's share.  That is right, ain't it?  Yes, sir."

The note in suit is the note given to Henry.  Immediately after the execution of these deeds defendant and his wife conveyed the farm by warranty deed, subject to the life estate of Susannah, to one Garbisch.

A verdict for plaintiff was directed, and from judgment thereon defendant appeals.

For the appellant the cause was submitted on a brief signed by *Spencer M. Marsh* (*O'Neill & Marsh*, attorneys), who contended, *inter alia*, that the devise to the heirs of *Brooks* was void under the statutes against perpetuities, and that, having no interest or possibility of interest in the property, the Brooks children had nothing to convey. There was no litigated or doubtful claim, the compromise of which would be a consideration for the note.

For the respondent there was a brief by *Chas. F. Grow*, attorney, and *R. J. MacBride*, of counsel, and oral argument by *Mr. MacBride*.

WINSLOW, J.  No fraud is claimed by the defendant to have been perpetrated on him, but he claims that the children of *Brooks* had no interest of any kind in the land, and that the consideration for the note thus entirely failed. We deem it unnecessary to construe the will, and shall not undertake to do so.  This seems to be a case of the compromise of a doubtful claim.  It appears that *Brooks* claimed that his children possessed a future contingent estate in the land, and that the claim was made in perfect

good faith, based upon the terms of the will of John D. Wage. The defendant denied this claim, but he chose to compromise it and take a release, rather than await the course of events. This release was an entirely sufficient consideration for his promise to pay, and, in the absence of fraud or undue advantage, it was equally sufficient whether it should now be held that the children of *Brooks* really had any interest, vested or contingent, in the land or not. *Hewett v. Currier*, 63 Wis. 394. It follows that a verdict for the plaintiff was rightly directed.

*By the Court.*— Judgment affirmed.