CHENA LUMBER & LIGHT CO. v. LAYMON.

(Fourth Division.  Fairbanks.  September 20, 1910.)

No. 1541.

FRAUDS, STATUTE OF (§ 18*)—ASSUMPTION OF DEBT BY PURCHASER.
     One Rochon owed the plaintiff $409 on account of lumber
   which entered into the construction of a building.  Rochon sold
   the building to the defendant, who agreed with Rochon and
   plaintiff that he would pay plaintiff that sum in consideration
   of the transfer of the building to him.  The transfer was ac-
   cordingly made, and when sued by plaintiff to recover the sum
   due, defendant pleaded the statute of frauds.  *Held*, the prom-
   ise of the transferee of property, made in consideration of a
   transfer to assume and discharge an indebtedness of the trans-
   feror to a third person, is obligatory on him, although resting in
   parol.
     [Ed. Note.—For other cases, see Frauds, Statute of, Cent.
   Dig. §§ 27–31; Dec. Dig. § 18.*]

This is an action for an accounting upon an account alleged
to have been stated in the sum of $521.10, on or about the 25th
day of August, 1909, at Chena, Alaska, upon which a payment
of $50 had been made, leaving a balance of $471.10 due and
owing since August 25, 1909.

The answer denies the accounting, that the defendant is in-
debted in the sum of $471.10, or in any sum whatever, or that
a payment of $50 was made upon the above account.

The facts show: That Rochon owned a certain frame build-
ing, for and in consideration of which he had purchased from
the defendant corporation, and its predecessors in interest,
lumber, for which he was owing in April, 1907, the sum of
$409.90.  That on or about the said date Rochon and the de-
fendant Laymon came to the plaintiff company's office, in
Chena, Alaska, and in the presence of Harrais, its president
and manager, and one Rapp, its agent and secretary, and pro-
posed to Mr. Harrais that the title to the building be transfer-
red by Rochon to Laymon, and that he (Laymon) would as-
sume and pay the amount due against Rochon.  That at the
said time Rochon gave a bill of sale to Laymon.  Laymon made

no payments upon the said debt so assumed by him, but at the time of the alleged settlement and account stated, August 14, 1909, gave a bill of sale to Harrais, and subsequently Harrais, in behalf of the plaintiff herein, sold the said building for the sum of $50, which credit is given in the complaint.

The defendant denies that there was an account stated, as to this part of the transaction, on August 14th, but admits upon said date that he visited the offices of the plaintiff, at which time he owed it the sum of $111.20, and in addition to giving the bill of sale gave a verbal order on one Griffin, of Chena, in the sum of $50, which was evidenced by a note, and which was not paid, and the note later sent to Griffin at the Iditarod. At the same time a written order was given by Laymon to the plaintiff on one Kindred, in the sum of $34, who, at the time, was an employé of the plaintiff company, but who left or was discharged on the same date the order was delivered to the plaintiff company, and no collection was made of the same.

A. R. Heilig, of Fairbanks, for plaintiff.
John A. Clark, for defendant.


OVERFIELD, District Judge. The defendant contends that there was no account stated on August 14, 1909, as to the item of $409.90, alleged to be due on the debt and mortgage owed to plaintiff by one Rochon, the predecessor in interest of Laymon, the defendant herein. That it was a debt owing originally by Rochon to Harrais for lumber used in the construction of the building, which building was by bill of sale, and while in his possession, transferred by Rochon to Laymon.

It appears that Harrais' interests were subsequently, and prior to the beginning of this action, assigned to the plaintiff. The defendant, by his attorney, raises the question as to the defendant's liability to account to the plaintiff herein for the debt due from Rochon, in the absence of any writing or written instrument evidencing such assumption of the debt on the part of the defendant. In other words, that the matter comes within the statute of frauds (section 1044, c. 101, pt. 4, of the Alaska Codes), which provides in part as follows:

"In the following cases an agreement is void unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged, or by his lawfully authorized agent:" To "an agreement to answer for the debt, default, or miscarriage of another."

It is necessary, then, to review both the law, stating the exceptions, and the evidence in this action, to find whether defendant's contention be sound.

There can be no argument with the law, but the facts, which seem to modify the general rule under the statute of frauds, and bring the matter without it, are important. The rule stated in Cyc. vol. 20, 179, and which seems to be the law in most, if not all, of the states, and especially in Oregon, is as follows:

"The promise of the transferee of property, made in consideration of a transfer to assume and discharge an indebtedness of the transferor to a third person, is obligatory on him, although resting in parol. By adopting this particular mode of discharging his own debt to the transferor, the transferee in effect makes the debt of the latter his own; and the fact, that by thus paying his own debt, he incidentally discharges the debt of another does not bring his promise within the statute of frauds. This principle applies to an oral promise by the purchaser of lands or chattels which are subject to a mortgage or other incumbrance, to assume and pay off the incumbrance as part of the price."

The principle is well illustrated by the cases therein cited. The evidence shows that the defendant and Rochon went to the offices of the plaintiff together for the purpose of making the transfer of the building secured by the mortgage, and advised with Harrais, who was then acting president and manager for the plaintiff company. Defendant Laymon desired to secure the building, which he wished to use as a saloon, and move the same some distance down the creek, on which it was then situated, to what he then considered a better location. What actually transpired was a sale of the building by Rochon to Laymon, a bill of sale evidencing the transfer from Rochon to Laymon, and an agreement on the part of Laymon with Harrais, representing the plaintiff company, to pay monthly rents or installments until the debt should be extinguished to the plaintiff company.

Laymon paid for the building, according to his own testimony, cash in the sum of about $50, and canceled the debt owing from Rochon to him in the sum of about $25. This in addition to the assumption of the mortgage debt. The testimony of all the witnesses shows the building at the time to have been worth from $500 to $750, and that the mortgage debt was then due. The venture proved a loss by reason of the rapid change necessary following the development in the mining of placer claims in mining camps.

The defendant, at the time of the transfer of the building to him by Rochon, assumed such indebtedness, with the full intention that, when the proceeds from the rents or payments should have extinguished the debt, the building would then be his own. Such a transaction amounted to an original promise on his part to pay the debt due the plaintiff company by Rochon.

Under such state of facts, cases are practically unanimous and numerous, and bring such a transaction without the statute of frauds. Where the facts show that the debtor has transferred or delivered the promisor, for his own use or benefit, money or property, in consideration of the promisor's agreement to assume and pay the outstanding debt, and he thereupon promises to pay, that promise is an original one, and the promisor assumes the indebtedness and becomes primarily liable for its discharge, independent of any liability of the original debtor. First National Bank v. Chalmers, 144 N. Y. 432, 39 N. E. 331; White v. Rintoul, 108 N. Y. 222, 15 N. E. 318; Wilson v. Smith, 73 Iowa, 429, 35 N. W. 506; Lookout Mountain Railway Co. v. Houston, 85 Tenn. 224, 2 S. W. 36; Clapp v. Webb, 52 Wis. 638, 9 N. W. 796; Greene v. Burton, 59 Vt. 423, 10 Atl. 575; Crawford v. Edison, 45 Ohio St. 239, 13 N. E. 80; Wilson, Van Suan & Co. v. Hentges, 29 Minn. 102, 12 N. W. 151; Clopper v. Poland, 12 Neb. 69, 10 N. W. 538; Hewett v. Currier, 63 Wis. 386, 23 N. W. 884; Bowen v. Tipton, 64 Md. 275, 1 Atl. 861; Mulcrone v. American Lumber Co., 55 Mich. 622, 22 N. W. 67; Clay v. Tyson, 19 Neb. 530, 26 N. W. 240; Emerson v. Slater, 63 U. S. (22 How.) 35, 16 L. Ed. 360; Son-

stiby v. Keeley (C. C.) 7 Fed. 447; Sanders v. Barlow (C. C.) 21 Fed. 836; Feldman v. McGuire, 34 Or. 309, 55 Pac. 872.

The defendant admits the item of indebtedness in the sum of $111.20, but alleges part payment, in that the plaintiff accepted an order on one of its employés in the sum of $34. The evidence shows that such an order was given by the defendant at the time alleged, and received by the plaintiff company, but that the. employé had no balance due him at the time, and left the employment of the plaintiff company on the same day that the order was transferred.

The question then arises whether the order accepted by the plaintiff constituted payment. Payment can result only from mutual agreement of the parties that the transaction shall have that effect, and, without such consent, the transaction cannot be treated as a payment. In other words, in the absence of evidence to that effect, the presumption would be, under such circumstances, that the order was not received by the plaintiff as payment. Borland v. Nevada Bank, 99 Cal. 89, 33 Pac. 737, 37 Am. St. Rep. 32.

The testimony shows that the defendant, at the time he gave the order, was about to leave Chena for the Iditarod, and, in his efforts to meet and settle his bills as far as possible, gave two orders to the plaintiff company. It developed that neither amount transferred to the plaintiff was collected by it. The evidences of the debt were returned by mail to the defendant while he was still in the Iditarod. There is no evidence to show that anything was said by either parties at the time the orders were transferred as to how these evidences of indebtedness to the defendant should be received by the plaintiff company, except that defendant testified that the plaintiff company received them as part payment on his debt, a legal conclusion which he failed to substantiate by facts.

In the absence of evidence to the contrary, the court is obliged to presume that the note and order were received by the plaintiff company for collection, and, if made, to be applied on the account of the defendants.

The court finds that the defendant owes, under the statement rendered him by the plaintiff company, on August 14, 1909,

4 A.R.—15

the sum prayed for. The part payment of $50 is allowed for the reason that the testimony shows that $50 was a reasonable price for the building at the time it was sold by the plaintiff company, under the bill of sale given by the defendant.

Judgment in the sum of $471.10, and costs of this action may be prepared.