JOSEPH H. WILSON and others *vs.* NICK HENTGES and another.

April 19, 1882.

**Statute of Frauds—Guaranty, on Consideration moving to Guarantor.**
Where the holder of a third person's contract transfers the same to another person, upon a consideration moving to himself, his guaranty thereof, made simultaneously with the transfer, and as a part of the transaction, is not a special promise to answer for the debt or default of another, within the meaning of the statute of frauds, and therefore need not be in writing.

Appeal by plaintiffs from a judgment of the district court for Houston county, where the action was tried by *Farmer,* J., and a jury, a verdict rendered for the defendants, and a motion for a new trial denied.

A former appeal in this case is reported in 26 Minn. 288.

*P. J. Smalley* and *James O'Brien,* for appellants.

*W. H. Harries* and *G. J. Lomen,* for respondents.

MITCHELL, J.   Budge & Russell, otherwise known as "The Cedar Falls Scale Company," were the owners of a patent for "the farmer's sack-holder weighing scale." They also held a contract executed to them by Essler, Norris & Doolittle, to manufacture these scales for them at seven dollars apiece.   On March 8, 1875, in consideration of the notes in suit, Budge & Russell sold to defendant Hentges the exclusive right to sell these scales in Vernon county, Wisconsin, for three years, and transferred to him the Essler, Norris & Doolittle contract, with the following *written* order indorsed thereon: "Deliver scales to Nick Hentges;" and simultaneously with the license and transfer, and as a part of the same transaction, *verbally* guarantied to Hentges that Essler, Norris & Doolittle would furnish the scales according to the contract; that if they did not, they themselves would furnish them; that the scales should be furnished.

Relying on this guaranty, Hentges executed the notes in suit, Schaller joining as his surety.   During the negotiations it had been understood that Hentges would have to get his scales from or through Budge & Russell.   In fact, this would be implied from the nature of

the transaction; for, the article being patented, no one had a right to manufacture or vend it except the patentees or their licensees, and, without the means of procuring the scales, the license to sell would be valueless. Essler, Norris & Doolittle wholly neglected and refused to manufacture or furnish Hentges any scales, and Budge & Russell, although notified of the default, and called on for scales by Hentges, also failed to furnish them. The result was that Hentges, after having expended both time and money in preparing to sell the scales, and after having made 38 contracts of sale, at $15 per scale, was compelled to abandon work, and the whole three years, during which his license to sell continued, elapsed without his obtaining any scales, or being able to realize anything. Budge & Russell transferred the notes to plaintiffs.

It was proved in evidence on the trial that, upon a former trial of this cause, plaintiffs admitted in open court that they were not *bona fide* purchasers for value before maturity, which admission was incorporated into a record of the case. Whether conclusive or not upon plaintiffs, this admission was admissible in evidence against them upon the second trial. 1 Greenleaf on Ev. § 186; *Holley* v. *Young*, 68 Me. 215.

Under the foregoing state of facts the principal question in this case is whether this guaranty by Budge & Russell of the Essler, Norris & Doolittle contract was a "special promise to answer for the debt, default, or doings of another," within the statute of frauds, and hence void because not in writing. While the authorities disagree as to the reason for the rule, yet they agree in holding that where the holder of a contract of a third person transfers it to another, upon a consideration moving to himself, his guaranty thereof, made simultaneously with the transfer, and as a part of the transaction, is not a promise to answer for the debt or default of another within the meaning of the statute; or, as the same thing is sometimes expressed, a guaranty is not within the statute where the debt or contract guarantied was transferred from the guarantor to the guarantee, at the time of making the contract of guaranty, upon a consideration moving wholly between the parties to the guaranty.

The reason assigned in some of the cases is that a promise is not within the statute where the leading or main object of the promisor is to subserve some purpose of his own and to benefit himself. This has been often, and we think very justly, criticised as being too indefinite and elastic to be adopted as a legal rule or test. Again, other authorities (following the classification of Chancellor Kent in *Leonard* v. *Vredenburgh,* 8 John. 23) hold that such a guaranty is not within the statute, because founded on a new and original consideration moving from the guarantee to the guarantor, the idea being that "any new and independent consideration of benefit to the promisor moving between the newly-contracting parties," takes the case out of the statute. Notwithstanding the eminent authority for this doctrine, yet, as thus broadly stated, it is now very generally criticised and disapproved, as not furnishing a correct criterion by which to determine whether or not a case comes within the statute. Some text-writers have suggested, as the reason why a guaranty made under such circumstances is not within the statute, that it is a mere extension of the terms of the warranty which the law implies upon the sale of any chattel or chose in action, and not a contract created *ab origine* for the purpose specified in the statute of frauds.

Another reason often assigned is that such a guaranty is in substances a promise to pay the guarantor's own debt, and therefore not within the statute, though the debt of a third person be incidentally guarantied. This provision of the statute of frauds was never designed to enable men to evade their own obligations entered into solely for their own benefit, but it was designed to accomplish just what it says, viz., to prevent persons from being held liable for the debts or defaults of others upon mere verbal promises. The reason for such a provision was the temptation, through fraud and perjury, to impose a bad debt upon some other person of substance. Hence a general principle running through all the cases is that whenever a person's promise is in effect to pay his own debt, it is not within the statute, although in form and incidentally it guaranties the debt of another. Such a case is not within either the spirit or the mischief of the statute. And in holding that a guaranty, such as we are con-

sidering in this case, is not within the statute, the reasoning of many cases is that such a guaranty is merely a substitute for the promise of the guarantor to pay whatever the other party is to receive, in exchange for the consideration paid by him to the guarantor; that instead of agreeing to pay it himself directly in the first instance, the guarantor, for his own convenience, substitutes the contract of a third person, accompanied by his own guaranty, which, in substance, amounts merely to a promise to pay his own debt.

But, whatever may be the best reason for holding such guaranties not within the statute, the doctrine is too well established by an unbroken line of decisions to be now questioned. *Hargreaves* v. *Parsons*, 13 M. & W. 561; *Cardell* v. *McNiel*, 21 N. Y. 336; *Bruce* v. *Burr*, 67 N. Y. 237; *Malone* v. *Keener*, 44 Pa. St. 107; *Ashford* v. *Robinson*, 8 Ired. Law, 114; *Hopkins* v. *Richardson*, 9 Gratt. 485; *Rowland* v. *Rorke*, 4 Jones, Law, 337; *Mobile & Girard R. Co.* v. *Jones*, 57 Ga. 198; *Hall* v. *Rodgers*, 26 Tenn. 536; *Barker* v. *Scudder*, 56 Mo. 272; *Hackleman* v. *Miller*, 4 Blackf. 322; *Beaty* v. *Grim*, 18 Ind. 131; *Jones* v. *Palmer*, 1 Doug. 379; *Thomas* v. *Dodge*, 8 Mich. 50; *Huntington* v. *Wellington*, 12 Mich. 10; *Smith* v. *Finch*, 2 Scam. 321; *Dyer* v. *Gibson*, 16 Wis. 557; *Wyman* v. *Goodrich*, 26 Wis. 21; *Eagle Mowing & Reaping Machine Co.* v. *Shattuck*, 53 Wis. 455. This court has also so held in *Nichols* v. *Allen*, 22 Minn. 283, although, as already suggested, the reason there given for the decision may not be correct. See, also, *Sheldon* v. *Butler*, 24 Minn. 513. The only case we have found which even seems to hold otherwise is *Dows* v. *Swett*, 120 Mass. 322. But it will be observed that in that case the note guarantied was never owned by the guarantor, but was executed directly to the guarantee.

The appellants, however, urge that oral evidence of the guaranty was inadmissible, under the rule that parol evidence is inadmissible to contradict or vary a written contract. The only writing was the order indorsed on the Essler, Norris & Doolittle contract, directing them to deliver the scales to Hentges. This did not purport to contain the whole contract between the parties. The guaranty related to an entirely different subject-matter from that covered by the written order. Hence the introduction of parol evidence of the guaranty

did not conflict with the rule of evidence invoked.  *Healey* v. *Young,* 21 Minn. 389.

It is also suggested that Hentges, not having tendered to Essler, Norris & Doolittle the purchase-money for the scales, nor exhibited to them his authority to receive the scales, never put himself in position to demand them.  Suffice it to say that this was not the ground upon which Essler, Norris & Doolittle put their refusal.  When applied to by Hentges for the scales, they told him that they were not able to make any, and could not make them.  After this repudiation of their contract, Hentges was not required to go through the useless ceremony of exhibiting his order for the scales, or tendering the purchase-money.

Appellants likewise urge that the defendants have failed to establish by the evidence either a failure of consideration or any measure of damages entitling them to a verdict.  Whether the defence be treated as failure of consideration, or recoupment of damages resulting from the breach of the guaranty, the undisputed evidence in the case would entitle the defendants to a verdict.

Judgment affirmed.