# CASES

## ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF MINNESOTA.

---

### CHARLES H. BEYERSTEDT *vs.* WINONA MILL CO.

Argued Dec. 10, 1891.  Decided March 10, 1892.

**Parol Evidence to Vary Written Contract.**—The rule as to the inadmissibility of parol contemporaneous evidence to contradict or vary the terms of a written instrument or contract has no application where the alleged agreement is incomplete and imperfect, in that, upon its face, it does not purport to contain the whole agreement, or where, because lacking in some of the essentials of a contract, it falls short of being one.

|    |     |
|----|-----|
| 49 | 1   |
| 54 | 207 |
| 49 | 1   |
| 63 | 224 |
| 49 | 1   |
| 82 | 249 |

**A Contract Construed to be Incomplete.**—The parties hereunto signed a writing bearing date March 20, 1890, as follows:· "It is hereby agreed between the Winona Mill Company and Chas. Beyerstedt that the latter is to receive for hauling, during the season of eighteen hundred ninety, (1890,) twenty-five (25) cents per load for sawdust and shavings from Empire Lumber Company's Mill, and thirty (30) cents per load for sawdust, and forty (40) cents per load in double boxes for shavings, from Winona Lumber Company's Mill, all delivered at our mill; all loads to be full boxes, and size of boxes same as old contract." *Held,* that oral testimony was admissible for the purpose of showing a parol contemporaneous contract between the parties in relation to the subject-matter referred to in the writing, and its terms and conditions.

**Part Performance under Statute of Frauds.**—*Held, further,* assuming the parol contract to have been for the sale of goods and chattels for the

v.49M.—1

price of more than $50, void under the statute of frauds, unless the buyer accepted and received a part of such goods and chattels, that from the evidence it appeared that the defendant buyer had accepted and received a part thereof.

Appeal by defendant, the Winona Mill Company, from an order of the District Court of Winona County, *Start*, J., made July 23, 1891, denying its motion for a new trial.

Defendant was a corporation engaged in manufacturing flour at its steam flouring mill at the City of Winona. For fuel in running its mill, it used sawdust and shavings made at the sawmills situated upon the bank of the Mississippi River in that city. The plaintiff, Charles H. Beyerstedt, on March 20, 1890, entered into a contract with defendant to haul in the season of 1890, from the sawmills, and deliver to it, sawdust and shavings, for which he was to receive twenty-five cents per load for hauling it from the sawmill of the Empire Lumber Company, and thirty cents per load for sawdust, and forty cents per load for shavings, for hauling from the sawmill of the Winona Lumber Company. These sawmills ran only while the river was unfrozen and open so as to allow the floating of pine saw logs to the mills.

A memorandum of this contract, or of a part of it, was made on that day, and signed by the plaintiff and defendant, and is set forth in the opinion. Plaintiff then entered into contracts with the owners running these sawmills whereby he agreed to speedily remove the sawdust and shavings from the sawmills, and not allow it to accumulate. Defendant needed it all to run its flouring mill. Plaintiff commenced hauling and delivering it when the sawmills started up in April, 1890, and had up to and including May 14, 1890, hauled and delivered 2,718 loads. On the evening of that day the flouring mill was destroyed by fire. Defendant paid plaintiff $800.35 for the sawdust and shavings he had delivered up to that time, and refused to receive or pay for any more, as it had no longer any use for it.

The old contract mentioned in this memorandum was as follows:

WINONA, MINN., March 7, 1889.

As per agreement made this day between Winona Mill Co. and C. H. Beyerstedt, the latter is to receive thirty (30) cents per load for hauling sawdust, shingle dust, shavings, and other refuse from the Winona Lumber Co.'s Mill to the mill of the former, and to keep the same clear or away from the sawmill, and deliver. it in the usual manner at the mill of the former. Wagon boxes to be furnished by Mill Company, and the above named price is for full boxes. This contract is to be in force for season of 1889. The delivery of shavings to not exceed five to ten loads per day.

WINONA MILL Co.

H. E. BROOKS, *Supt.*

C. H. BEYERSTEDT.

The plaintiff tendered performance on his part, and on January 2, 1891, commenced this action to recover $4,857.12 damages for nonperformance by defendant, claiming that he agreed to deliver, and the defendant agreed to receive and accept, the entire output of sawdust of the two sawmills during the season of 1890, averaging two hundred and forty-six loads per day for one hundred and sixty working days after May 14, 1890. The defendant contended that the only contract it made with plaintiff was the memorandum signed by the parties and set out in the opinion; that by this contract the hauling and delivery to it should cease at the will of either party, and that it notified plaintiff immediately after the destruction of its mill that no more fuel would be required or accepted by it.

The issues were brought to trial before a jury in May, 1891. For the purpose of showing the situation of the parties, the purpose they had in view in making this memorandum, the nature and quality of the subject-matter thereof, the meaning of the terms used, and the consideration upon which it was made, the court received oral evidence of all that was said and done by the parties in the premises prior to signing it.

The defendant excepted to the admission of this evidence, and now assigns it as error. The jury returned a verdict for plaintiff,

and assessed his damages at $2,900. The defendant moved the court for a new trial. The court denied it, saying: The memorandum does not purport upon its face to be the entire contract of the parties, but only a memorandum fixing the price and size of the loads. If such is the case, parol evidence is proper to show what the contract was. *Ruggles* v. *Swanwick*, 6 Minn. 526, (Gil. 365;) *Thompson* v. *Libby*, 34 Minn. 374; *Boynton Furnace Co.* v. *Clark*, 42 Minn. 335; *Domestic Sewing-Mach. Co.* v. *Anderson*, 23 Minn. 57; *Real Estate Title Insurance & Trust Co.'s Appeal*, 125 Pa. St. 549; *Pacific Iron Works* v. *Newhall*, 34 Conn. 67.

Upon the face of this memorandum, the consideration, the terms of the old contract, and all explanation of the meaning of the term "during the season of 1890," are omitted. The plaintiff was to have for hauling and delivering the stipulated price not during the pleasure of the parties, but during the season of 1890. The precise quantity to be hauled and paid for and the meaning of the term season are left uncertain. The oral evidence shows that the defendant, in order to run its mill, needed the entire output of sawdust from the two sawmills; that it relied, and had for several years past, very largely, upon sawdust and sawmill refuse for fuel; that the season of 1890 meant the time the sawmills were running, (from spring to fall;) that the defendant was obliged and was accustomed to accumulate, during the season, sawdust for its use during the winter when the sawmills were shut down; that in order to secure the sawdust from the mills it was necessary to agree with the owners to haul away all of the sawdust and keep the mills clear of it for the entire season; that the plaintiff had in several previous years hauled the output of sawdust from certain sawmills to the defendant for the entire season; that they had obligated him to keep the dust clean from the sawmills. When read in the light of this evidence the intention and meaning of the parties to this writing become comparatively plain, and give force to the necessary implication that the plaintiff agreed to deliver, and the defendant to receive and pay for, the entire output of sawdust from the mills named, during the time they should be in operation during the year 1890. There are no mutual promises in this writ-

ing. The plaintiff does not promise to haul and deliver any sawdust. The defendant does not agree to receive any. Where a written contract, which is not required to be in writing, fails to state or show a consideration, it is not necessarily void, but parol evidence is admissible to show the consideration. Now, the consideration was the oral agreement of the parties that the plaintiff should haul, and defendant receive, the entire output of sawdust during the season of 1890, and it was proper to show this by parol evidence. The evidence fully showed both the authority of Brooks to make the contract, and the making of it by him.

*Wm. Gale* and *A. H. Snow*, for appellant.

Defendant insists that the only contract between the parties was to the effect that defendant should pay plaintiff certain prices for such fuel as defendant would, during the season of 1890, accept from plaintiff at its flouring mill. After some talk between the parties they executed the memorandum which was the outcome of the previous negotiation, and expresses the entire agreement.

The court erred in admitting oral evidence as to the agreement between the parties, and in charging the jury to take into consideration all the evidence given, both oral and written, in determining what the contract was.

Plaintiff was permitted to testify, not only to surrounding circumstances, but to the verbal negotiations and the conversations between the parties, in and by which it is claimed a contract was made, and the jury was directed to take these negotiations and conversations into consideration in determining what the contract was.

The use of parol evidence is limited simply to develop and throw light upon the real meaning of that which is written, in case of ambiguity arising from the face of the instrument. *King* **v.** *Merriman,* 38 Minn. 47; *Hei* **v.** *Heller,* 53 Wis. 415; *Thompson* **v.** *Libby,* 34 Minn. 374.

This writing gives no hint that anything is omitted from it. In it there is not a word indicating that it does not express the whole agreement or arrangement that the parties intended to enter

into respecting its subject-matter. Nor is there any uncertainty as to the object or extent of the engagement.

In *Boynton Furnace Co.* v. *Clark*, 42 Minn. 335, the decision was merely that the paper there in question, being simply an order for merchandise signed by one party only, was not to be regarded as a contract, and, therefore, that parol evidence of the contract really made was admissible. In this respect that case is similar to *Routledge* v. *Worthington Co.*, 119 N. Y. 592, and to *Pacific Iron Works* v. *Newhall*, 34 Conn. 67. This contract is not unilateral; it is signed by both parties.

In *Real Estate Title Insurance & Trust Co.'s Appeal*, 125 Pa. St. 549, it is held that, the agreement in question being silent as to its duration, parol evidence might be admitted to show that the parties did not intend to bind themselves for any particular period of time. That would be apparent, without parol evidence, from the failure to fix the time in the writing. Between *Domestic Sewing-Mach. Co.* v. *Anderson*, 23 Minn. 57, and the case at bar, we can discover no similarity. Hence, it is unnecessary to express a doubt if the decision in that case can abide the test established by the later ruling of this court in *Thompson* v. *Libby, supra.*

The alleged parol contract, if it had existed, would have been void under the statute of frauds, since it was clearly a contract for the sale of material of the value, in the aggregate, of more than $50. The labor of hauling was simply the means of delivery. *Brown* v. *Sanborn*, 21 Minn. 402; *Russell* v. *Wisconsin, M. & P. Ry. Co.*, 39 Minn. 145; *Pitkin* v. *Noyes*, 48 N. H. 294; *Prescott* v. *Locke*, 51 N. H. 94; *Pawelski* v. *Hargreaves*, 47 N. J. Law, 334.

The receipt and acceptance of the material actually delivered before May 15, 1890, did not take the pretended verbal agreement out of the statute, for two reasons: *First.* Because the quantity alleged to have been contracted for was indefinite and unascertained at the time of the deliveries. The amount of the season's output from the two sawmills was then uncertain. *Russell* v. *Wisconsin, M. & P. Ry. Co.*, 39 Minn. 145. *Second.* It does not appear that the sawdust delivered was received in pursuance, or as part performance, of the pretended verbal contract. There is no evi-

dence that the defendant did receive it as such, while, if assumptions are to be indulged in, it would be more reasonable to assume that the acceptance was in pursuance of the arrangement as understood by defendant. *Marsh* v. *Hyde*, 3 Gray, 331; *Matthiessen & Weichers Refining Co.* v. *McMahon's Adm'r*, 38 N. J. Law, 536; *Davis* v. *Eastman*, 1 Allen, 422.

That the extent to which the agreement may become operative is left optional with the parties does not affect its validity. So far as the conditions might be supplied, the obligation could be enforced. There can be no doubt that upon the writing alone Beyerstedt could have recovered the stipulated prices for deliveries actually made, had the company refused to pay. *Andreas* v. *Holcombe*, 22 Minn. 339; *Warner* v. *Fischbach*, 29 Minn. 262; *Hoover* v. *Perkins Windmill & Axe Co.*, 41 Minn. 143; *Goward* v. *Waters*, 98 Mass. 596; *Lewis* v. *Owen*, 26 Neb. 156.

The continuing existence of the flouring mill was contemplated by both parties at the time when the arrangement was made, and was, as an implied condition, one of the elements of it. No furnishing of sawdust to defendant was thought of by either party, except for the one purpose of feeding the fire in the furnace room of defendant's mill.

*Frank L. Randall*, for respondent.

Plaintiff's claim is this, that in the spring of 1890, the parties mutually entered into a parol contract or agreement, similar in its terms and conditions to the written contracts between them on previous years, except as to the amount of the fuel and the price, and that no mistake or misunderstanding should arise relative to these two matters, a memorandum was made and signed, setting forth the prices agreed upon for the delivery of sawdust and shavings from the two sawmills.

The appeal is from an order denying a new trial, and the main, if not the only, question to be decided is whether the trial court erred in admitting parol testimony. To his order denying a new trial, the judge appended a memorandum of some length, giving his views of the case. Defendant in its points and authorities attacks

the logic of the trial judge. The opinion is printed in the paper book, and to it plaintiff refers for a succinct statement of his argument and for authorities.

· The purpose and effect of the parol testimony are not to contradict the memorandum, but simply to give it force and application, which it otherwise lacks. *Alexander* v. *Thompson,* 42 Minn. 498; *Johnston* v. *Patterson,* 86 Ga. 725.

The subsequent delivery of a part of the personal property sold by an agreement within the statute of frauds, takes the agreement out of the operation of the statute. *Gaslin* v. *Pinney,* 24 Minn. 322.

COLLINS, J. Appellant corporation was the owner and operator of an extensive steam flouring-mill in the city of Winona. In the same city were sawmills about which large quantities of sawdust and shavings accumulated during each running season, and, prior to the year 1890, written contracts had been entered into between the parties hereunto, under which respondent furnished and delivered at the flouring mill, and appellant received and used for fuel, the refuse accumulation of sawdust and shavings from at least one sawmill. On March 20th of the year just mentioned the parties signed a writing, dated on that day, in the following words and figures:

" WINONA, MINN., March 20, 1890.

"It is hereby agreed between the Winona Mill Company and Chas. Beyerstedt that the latter is to receive for hauling, during the season of eighteen hundred and ninety, (1890,) twenty-five (25) cents per load for sawdust from Empire Lumber Company's Mill, and thirty (30) cents per load for sawdust, and forty (40) cents per load in double boxes for shavings, from Winona Lumber Company's Mill, all delivered at our mill. All loads to be full boxes, and size of boxes same as old contract calls for.

· [Signed]                    " WINONA MILL CO.

" H. E. BROOKS, Supt.

" C. H. BEYERSTEDT."

The respondent soon afterwards commenced to deliver from the two mills mentioned in the writing, and appellant to receive and pay for, the specified articles, and such delivery, receipt, and payment continued until May 14th, when appellant's gristmill was destroyed by fire.  Having no further use for fuel, appellant thereafter refused to receive, and this action was brought to recover damages for a breach of an alleged contract under which it was averred the respondent, plaintiff, had agreed to furnish and deliver, and appellant, defendant, had stipulated to accept and receive, the entire accumulation or output of sawdust and shavings of the sawmills, mentioned in the writing, for and during the season or year of 1890.  A verdict was had for plaintiff, and the appeal, from an order denying a new trial, is based, mainly, upon alleged error in the rulings of the court below, made after the writing of March 20th had been put in evidence, under which parol testimony as to the terms and conditions of the contract sued on was permitted and produced, and also error in the charge, whereby the jury were instructed that they could take into consideration all of this testimony when determining what the contract really was. It is appellant's claim that, when permitting testimony tending to establish the contract set forth in the complaint, the trial court encroached upon and violated the exceedingly familiar rule that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.  If this claim be well founded, the verdict must be set aside; for, obviously, the allegations of the complaint in respect to the terms and conditions of the agreement between the parties were not sustained by the writing, and the testimony as to what sawdust and shavings were hauled and delivered by plaintiff, and received and paid for by defendant, after its execution.  Without oral evidence of the contract, the verdict, of necessity, would have been for defendant.  It is true that when parties have deliberately put their engagements into writing, in such terms as to import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the manner and extent of their undertaking, have been reduced to writing.  Hence the rule.  But before it can be appealed to, or have force, there must be a valid written in-

strument.   There must exist a writing, containing the terms of a contract between the parties, and designed to be the repository and evidence of their final intentions.   1 Greenl. Ev. § 275.   This rule of evidence has no application where the writing, on its face, is incomplete, in that it does not purport to contain the whole agreement, or, because lacking some of the essentials, falls short of being a contract.   If it contains such language as imports a complete legal obligation, it is to be presumed that the parties have introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed. *Thompson* v. *Libby*, 34 Minn. 374, (26 N. W. Rep. 1.)

The appellant construes this writing as wholly free from ambiguity, and that under it the corporation was obliged to take no more of the specified articles than it might, from time to time, elect to take.   That is, the acceptance of any quantity, great or small, of sawdust or shavings, was absolutely optional with appellant corporation.   Of course, a writing may be unambiguous, and yet not rise to the dignity of a contract, so that when oral evidence is received tending to show that there really was a contract between the parties, and what that contract was, the rule of evidence in question, which always presupposes a valid and complete engagement, is not disregarded or intruded upon.   We are not inclined to differ with counsel for the appellant in their construction of this writing, for the only certain term to be found in it is that in respect to the prices per load—the size thereof to be ascertained by reference to a former contract—for such loads as plaintiff might deliver, and defendant might receive, during the season or year of 1890.   No obligation rested upon the former to deliver, and none upon the latter to receive, a single load, and therefore the writing seems to have been nonenforceable, if either party declined to act.   It is no answer to this to say, nor does it help the appellant for it to take the position, that, when the articles were delivered and accepted, the price per load named therein could be recovered, if not voluntarily paid, because the validity and completeness of a contract must be determined by its terms and conditions when made, and not by subsequent events.   The

proposition of the court below that this writing, and on its face, was either invalid, for the reasons stated in *Bailey* v. *Austrian*, 19 Minn. 535, (Gil. 465,) or was an incomplete and imperfect obligation, not containing the entire contract, as were the writings considered in *Domestic Sewing-Mach. Co.* v. *Anderson*, 23 Minn. 57, and *Boynton Furnace Co.* v. *Clark*, 42 Minn. 337, (44 N. W. Rep. 121,) seems to be correct. If invalid upon its face, the real contract between the parties could be shown by parol; if not within the statute of frauds,—and of that hereafter,—and if incomplete and imperfect upon its face, the consideration and meaning thereof not being ascertainable, except by extrinsic oral evidence, such evidence was admissible for that purpose. From the proofs it appeared, without objection, that plaintiff had contracted for or purchased the entire output of sawdust and shavings of the sawmills for the season of 1890, that he might supply the defendant; that the entire quantity was needed by it for fuel during the year; and that the articles could not be allowed to accumulate at the sawmills. It also appeared that for several years prior to 1890 the plaintiff and defendant had entered into and fulfilled contracts of the import and character of that set forth in the complaint herein, and that these old contracts were in mind and referred to by both parties, when, on March 20, 1890, the making of a new one was being considered, and that one of these contracts was mentioned, and, as to the size of the loads, actually made a part of the writing of that date. This testimony defined the nature and quantity of the subject-matter. It showed the situation and relation of the parties, and the meaning of some of the terms used, if we regard the writing as imperfect and incomplete.

It was shown on the trial that, at the stipulated price per load, about $800 had been paid to plaintiff for sawdust and shavings delivered prior to the destruction of defendant's mill. Treating the contract testified to by plaintiff as one for the sale and delivery of goods for a price exceeding $50, not in writing, and therefore void under the statute of frauds, it is urged by defendant's counsel that no part of the goods were accepted and received, and hence this action cannot be maintained. This view of the case does not appear to have been presented to the trial court at any time. But, assuming that it was

a contract for the sale and delivery of goods and chattels for a price exceeding $50, it is obvious that the purchaser accepted and received a part of the same. It may be, as argued by counsel, that the quantity of the output of sawdust and shavings could not be definitely ascertained when the contract was made, and·was not at the end of the season. The agreement was for the entire amount made by the two mills named, the size and capacity of each being known, undoubtedly, to the parties. The amount of this output of refuse could have been ascertained as readily, and by the same methods, as the amount of lumber and shingles the mills could manufacture during the same season. It was a matter of computation, and easily determinable. It is true that the amount was not actually ascertained during the season, but that was because the defendant refused to receive, and it not only became useless to plaintiff, but, under his agreement with the owners of the sawmills to speedily remove, and not to allow an accumulation, a positive detriment. As to appellant's second point upon this branch of the case, we need only say that there was evidence from which the jury were justified in finding that the delivery up to May 15th was under the contract as testified to by plaintiff, and not under that claimed by defendant. We are of the opinion that the remaining assignments of error need not be specially mentioned.

Order affirmed.

(Opinion published 51 N. W. Rep. 619.)