# B. F. BJORNSTAD v. NORTHERN STATES POWER COMPANY.[1]

November 15, 1935.

No. 30,685.

[1]Reported in 263 N. W. 289.

440

A. *William Groth* and *Cyrus Erickson,* for appellant.
*Alvin B. Christofferson* and *James E. Markham,* for respondent.

I. M. OLSEN, JUSTICE.

The defendant appeals from an order denying its alternative motion for judgment in its favor notwithstanding the verdict, or, if that be denied, then for a new trial of the action.

Defendant is a public service corporation producing and distributing electric current for power and light uses by its customers. In 1925 plaintiff was the owner and in possession of a farm of about 350 acres in Dakota county in this state upon which he had constructed or was then constructing a substantial dwelling house, barn, and other outbuildings, which were wired for electric current for lighting and power purposes. The defendant owned and operated a power line along a main public highway about a mile and a half distant from plaintiff's buildings. In July, 1925, plaintiff made an application to defendant to furnish electric current for his buildings. According to plaintiff's evidence, negotiations were thereafter had by him with Mr. Wagner, a representative of the defendant company. Plaintiff was informed he would have to build a lead line from his buildings out to defendant's power line on the highway and that thereupon defendant would connect up with said line and furnish light and power service for his buildings. Plaintiff agreed to and did build the line, at an expense of $1,583.83. Defendant was notified that the lead line was completed, and Mr. Wagner came to plaintiff's farm to see about the installation of service. He then informed the plaintiff that in order to furnish the service the defendant required that plaintiff should transfer to it

the ownership of the lead line, constructed by plaintiff, by a bill of sale; that thereupon the service would be furnished and defendant would refund to plaintiff the cost of the line built by him; that because of other similar situations in Wisconsin the repayment of the cost of the line would be deferred for three years and plaintiff would then be repaid such cost with interest. Plaintiff agreed to this oral proposal and promise of payment and thereupon signed and delivered to Wagner what is designated thereon as "Rural Service Agreement." This was done about December 5, 1925. After the three years expired the plaintiff saw Mr. Wagner a number of times and was told that payment would be made, but none was made. Wagner in his testimony denied that he had these negotiations with plaintiff or made any agreement with him.

This action was commenced in May, 1933, to recover the cost of the line constructed by plaintiff, with interest, and plaintiff recovered a verdict. The assignments of error here are that the verdict is not sustained by the evidence and is contrary to law; that the court erred in denying defendant's motion for a directed verdict and erred in certain rulings on the evidence.

1. Does the evidence sustain the verdict? The direct and positive testimony of plaintiff is corroborated by his wife as to statements made by Wagner to her or in her hearing, and further corroborated by the testimony of the witness Swenson that he, for the bank in which he was employed as cashier and manager, made a loan to plaintiff on the security of an assignment of plaintiff's claim here in question, that he went to the office of the defendant in Minneapolis and left the assignment there with Mr. Wagner, and that he inquired of Mr. Wagner as to the claim of plaintiff and was informed that it would be paid but that he could not tell just what time, there was no date set. This transaction was apparently before the three-year period had expired.

The making of the oral agreement for the repayment to plaintiff of the cost of this service line, as above noted, is well sustained by the evidence.

2. In his motion for a directed verdict, defendant's counsel presented several grounds for such motion. One ground was that the

agreement sued upon was void under the statute of frauds [2 Mason Minn. St. 1927, § 8456] because it was not to be performed within one year and because it was an agreement, not in writing, for a sale of property for a price of more than $50. It is a sufficient answer that the contract has been fully performed by plaintiff, and the defendant has received and accepted the property involved. Langan v. Iverson, 78 Minn. 299, 80 N. W. 1051; Stitt v. Rat Portage Lbr. Co. 98 Minn. 52, 107 N. W. 824; Nelson v. McElroy, 140 Minn. 429, 168 N. W. 179, 587.

3. Another ground presented was that the statute of limitations [2 Mason Minn. St. 1927, § 9191] had run against the action. The agreement was to pay within three years, and the cause of action did not accrue until three years after the agreement was made. This action was commenced about four and one-half years after the expiration of the three-year period, hence the statute of limitations had not run against its enforcement.

4. A third ground was that the written contract entered into about December 5, 1925, entitled "Rural Service Agreement," exhibit 1, superseded all prior oral agreements and covered the entire subject matter of the transactions between the parties and could not be varied by oral testimony as to other or additional consideration.

This third ground for a directed verdict raises the important question in the case. Is this rural service agreement complete so as to be a contractual agreement covering the purchase price of the lead line constructed and paid for by the plaintiff?

There is evidence that some time prior to the signing of exhibit 1 a mimeographed contract was signed by plaintiff and delivered to defendant. There is no evidence of the contents of this mimeographed contract. The plaintiff calls it a bill of sale, and defendant's witness Wagner testified that it was a preliminary copy of contract made because the printed form of exhibit 1 had not yet been received by the company. The defendant had destroyed the mimeographed instrument. The evidence as to this instrument is not sufficient to be of any benefit to either party.

It is elementary law that if the consideration stated in a written contract is more than a stated amount of money and is contractual and the contract covers the entire transaction between the parties the contract cannot be varied by parol evidence to show a greater or different consideration. Thiem v. Eckert, 165 Minn. 379, 382, 206 N. W. 721, 723. That case also states the further rule:

"Before parol evidence can be admitted to show a collateral agreement, it must appear either from the contract itself or from the attendant circumstances, that the contract is incomplete and that what is sought to be shown as a collateral agreement does not in any way conflict with or contradict what is contained in the writing."

On this question of whether a contract is complete so that no collateral agreement may be shown, there are numerous decisions of this court holding contracts incomplete under various circumstances. Keough v. McNitt, 6 Minn. 357 (513); Ruggles, Nourse, Mason & Co. v. Swanwick & Duffy, 6 Minn. 365 (526); Wallrich v. Hall, 19 Minn. 329 (383); Domestic S. M. Co. v. Anderson, 23 Minn. 57; Wilson v. Hentges, 29 Minn. 102, 12 N. W. 151; Gammon v. Ganfield, 42 Minn. 368, 44 N. W. 125; Beyerstedt v. Winona Mill Co. 49 Minn. 1, 51 N. W. 619; Phoenix Pub. Co. v. Riverside Clothing Co. 54 Minn. 205, 55 N. W. 912; Aultman, Miller & Co. v. Clifford, 55 Minn. 159, 56 N. W. 593, 43 A. S. R. 478; Staples v. Edwards & McCulloch Lbr. Co. 56 Minn. 16, 57 N. W. 220; Vaughan v. McCarthy, 63 Minn. 221, 65 N. W. 249; Hand v. Ryan Drug Co. 63 Minn. 539, 65 N. W. 1081; Potter v. Easton, 82 Minn. 247, 84 N. W. 1011; Southwick v. Herring, 82 Minn. 302, 84 N. W. 1013; Rutherford v. Selover, 87 Minn. 495, 92 N. W. 413; McLoone v. Brusch, 119 Minn. 286, 138 N. W. 35; French v. Yale, 124 Minn. 63, 144 N. W. 451; W. W. Kimball Co. v. Massey, 126 Minn. 461, 148 N. W. 307; Wessel v. Cook, 132 Minn. 442, 157 N. W. 705; Farmers H. W. Co. v. Askegaard, 143 Minn. 13, 172 N. W. 881; Wade v. National Bank, 144 Minn. 187, 174 N. W. 889; Harding v. Texoleum Co. 154 Minn. 55, 191 N. W. 394; Osterberg v. Section 30 Development Co. 160 Minn. 497, 200 N. W. 738; Hoy v. Nichols, 170 Minn. 191, 212 N. W. 530.

While the writing itself is the criterion, it is not necessary that its incompleteness should appear on its face from a mere inspection. The situation of the parties, the subject matter, and attendant circumstances may be shown in aid of construing the writing as to whether it is or is not complete. Here we have a prospective customer of the defendant desiring electric current service. He had, at defendant's demand, built a pole and wire line a mile and a half long to connect with defendant's power line at an expense of some $1,500. Defendant then required that he transfer to it the ownership of this line. Defendant is a public service corporation and is required to furnish electric current to consumers where connections are made with its power line, without discrimination as to cost of service. It is engaged in the business of furnishing electric current for light and power purposes to rural consumers who connect with the lines, as well as to the consumers in cities and villages. The agreement here in question is a printed form of contract apparently used by it in furnishing service to rural consumers. It contains certain provisions in reference to connecting lines to be built either by the company or by the consumer, and it has a schedule of the rates to be charged the consumers. Section 7 of the contract reads as follows:

"In consideration of the execution of this Agreement and of the payment to him of the sum of one dollar ($1.00) by the Company, receipt whereof is hereby acknowledged, the Consumer hereby agrees to execute a Bill of Sale granting, bargaining and selling unto said Company all right, title and interest in and to all poles, wires, crossarms, insulators, line hardware, switching and protective devices, transformers, appurtenances, service extensions, connections, and all other equipment in which Consumer has an interest, if any, up to and ending at the Consumer's end of the service extension, as and for its exclusive property forever free and clear of all liens, claims and charges of any nature whatsoever, and in the absence of said Bill of Sale this agreement shall be deemed to so grant, bargain, sell and convey all right, title and interest as aforesaid, together with all necessary rights of way, permits and easements."

Section 8 gives the schedule of charges and reads as follows:

"After the completion of the construction necessary for supplying service so that energy therefrom is available for delivery, the Consumer agrees to pay to the Company monthly at its office at Faribault, Minn., or at such other place as the Company may designate in writing, within thirty (30) days from date of bill rendered, according to the following schedule of rates:

"SERVICE CHARGE:

"The monthly service charge shall be the sum of the following three classified amounts:

"A.—Company's General Investment Charge:

First 3 kilovolt-amperes or less of transformer capacity .......................................... $2.60

Each additional kilovolt-ampere of transformer capacity .......................................... $0.60

"B.—Company's Special Investment Charge:

One-twelfth of 15½ per cent per year on the special investment of the Company required to furnish such rural service.

"C.—Consumer's Investment Charge:

One-twelfth of 7½ per cent per year on the investment of the Consumer in such rural service equipment which has been assigned to the Company.

"ENERGY CHARGE:

"In addition to the Service Charge, all energy used shall be paid for at the following rates:

"Each kilowatt-hour of the first 30 kilowatt-hours used per month ...................................... 5 cents

"Each kilowatt-hour of the excess kilowatt-hours used per month ...................................... 3 cents"

We find in this contract no provision for payment of the consumer's investment in the line, where the connecting line is built by him. This plaintiff had an investment of over $1,500, which, under this contract, was transferred to the company without any compensation therefor, unless it be held that the one dollar was a

compensation for the line. The plaintiff was under no obligation, as far as we can see, to transfer his line to the company without consideration. There are in the contract itself a number of provisions which, under the circumstances shown, indicate that the contract is not complete. In the first place it requires the plaintiff to execute a bill of sale. No bill of sale is in evidence. Again, the agreement is to continue for one year and thereafter only from month to month until terminated by 30 days' written notice given by either party. We have, then, here a consumer who has an investment of over $1,500, with a provision that the contract may be terminated by either party on 30 days' notice after one year has expired. What would be the plaintiff's situation if the contract were terminated at the end of the first year? The title to the line which he had constructed at his own expense would apparently remain in the company. The printed provision of section 8 of the contract, that the company shall make a special investment charge of 15½ per cent per year on its special investment would, as we read it, authorize the company to make that charge for what it had invested in the connecting line. Again, the contract provides that the service charge "shall be the sum of the following three classified amounts." Then follow the A, B, and C charges stated in section 8, above quoted. It is clear that the company's "Special Investment Charge" authorizes the company to charge for its investment in the connecting line as well as for appliances furnished by it. In section 5 of the contract it is stated:

"It is estimated that the construction of the Consumer's service extension and installation of the Consumer's transformer in accordance with Section Three (3) and/or Section Five (5) of Rules and Regulations will represent an investment on the part of the Consumer of $130.00."

The reasonable inference is that this is the rural service equipment on which the consumer is to pay monthly one-twelfth of 7½ per cent.

There does not appear to be any definite evidence as to what service charges were in fact made.

The word "equipment" has several meanings, but we take it that when used in connection with the furnishing of electric service it ordinarily refers to transformers, switches, lights, and other items commonly installed for use of the current. It is difficult to see how the word could be held to mean a pole and wire line such as the one here in question.

There is a provision in the contract relating to the share of the total cost for line construction where the line is to be used jointly with other consumers. In this case there were no other consumers, and that provision does not appear to apply.

Reading this contract as a whole, viewed in the light of the situation of these parties under the circumstances shown, it does not appear to be complete as to the sale and consideration for the transfer of the line here in question by the plaintiff to this defendant, and we hold that the court did not err in refusing to direct a verdict on the ground that the printed contract could not be added to by showing the collateral oral agreement.

5. It is argued for the defendant that the plaintiff is now estopped from asserting his claim because of delay in bringing suit and because he was charged only 7½ per cent as a service charge on his investment in the rural service equipment instead of the 15½ per cent which, it is claimed, the company could have charged. The question of estoppel was not presented to or passed upon by the trial court. It is not mentioned in the motion for a new trial or in the assignments of error in this court. If the question is before us, it could only be because it is inherent in the defendant's motion for a directed verdict. We could hold that there was an estoppel here in any event only if we found that the evidence in the case was conclusive as a matter of law against the plaintiff on that question. We are not prepared so to hold. If the issue had been submitted to the jury, it is doubtful if the evidence was sufficient to sustain any finding by the jury that there was an estoppel.

6. There are a number of errors assigned upon the court's rulings on reception of evidence. We have examined these rulings and find in them no error which would justify any reversal of the order herein appealed from.

7. There were two requests to charge, which were denied. These requests have reference only to the question of the statute of limitations and are covered by what has already been said.

The order appealed from is affirmed.

