McCORMICK, Appellant, *v.* JOHNSON et al.,
RESPONDENTS.

(No. 1,957.).

(Submitted October 18, 1904.   Decided November 4, 1904.)

*Statute of Frauds—Promise to Pay Debt of Another—Original Objection—Evidence — Admissibility—Sufficiency—Harmless Error.*

1. A promise by partners to pay an existing debt of a corporation to another in consideration of such other person giving them an agency for sale of his coal is an original obligation, which, under Civil Code, Section 3612, Subd. 3, need not be in writing.

2. Evidence in an action for commissions for selling coal *held* sufficient to sustain a finding that plaintiff, in consideration of his agency for defendants, agreed to pay a debt owing them by another.

3. Evidence in an action for commissions *held* sufficient to sustain a finding that plaintiff's indebtedness to defendants equaled the amount of the commissions.

4. Where defendants claim that a certain contract was made with plaintiff's firm, which plaintiff denies, and according to defendants' claim it was made with both members of the firm, evidence as to whether plaintiff authorized his partner to enter into the contract for the firm is immaterial.

5. Any error in allowing plaintiff on cross-examination to be asked how a certain account stood is harmless, he having answered that he did not know.

6. Defendants who, in an action against them for commissions earned by a firm, claim that for a valuable consideration the firm agreed to pay the debt of an insolvent corporation to them, may testify that they received nothing from the assignee of the corporation.

7. Defendants, for the purpose of showing that the promise of plaintiff's firm to pay a debt owing them by a corporation was for a valuable consideration, and so not within the statute of frauds, may show the value of the business of the agency they gave on condition of such promise.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

Action by John McCormick against J. A. Johnson and J. C. McCarthy, partners doing business under the firm name of Johnson & McCarthy, and M. C. Harris.   From a judgment for defendants, and from an order denying a new trial, plaintiff appeals.   Affirmed.

*Mr. John J. McHatton,* and *Mr. George F. Shelton,* for Appellant.

*Mr. John A. Luce,* and *Mr. S. C. Herren,* for Respondents, Johnson & McCarthy.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought by John McCormick against J. A. Johnson and J. C. McCarthy, partners doing business under the firm name of Johnson & McCarthy, and M. C. Harris.

Stripped of barren verbiage, the pleadings disclose the following: That the plaintiff and the defendant Harris were partners doing business in Butte under the firm name of Harris & McCormick, hereafter referred to as the "firm"; that between November 25, 1895, and February 1, 1896, this firm sold for the defendants Johnson & McCarthy, at their special instance and request, 23,477,820 pounds of coal, for which they were to receive a commission of ten cents per ton, amounting to $1,173.-90, no part of which had ever been paid. Plaintiff further alleges that his copartner, Harris, refused to join him in this action as plaintiff, and therefore he is made a defendant. It is further alleged that the defendants are colluding and conniving together to defraud the plaintiff out of his interest in the amount due the firm; that Harris is insolvent, and, if permitted to secure possession of plaintiff's share, plaintiff will be unable to recover it. It is further alleged that the affairs of the copartnership of Harris & McCormick are fully wound up and settled, and there are no other assets of said firm except the account against Johnson & McCarthy, of which the plaintiff is entitled to one-half and Harris to the remainder. The prayer is for judgment against Johnson & McCarthy for $1,173.90 and for an injunction restraining the defendants from making any disposition of such sum pending the trial and final disposition of the controversy.

To this complaint the defendants Johnson and McCarthy filed a separate answer, admitting the existence of the copartnership of plaintiff and Harris, and also the partnership of John-

son & McCarthy; admitting also that the firm had sold the amount of coal mentioned in the complaint, and was to receive therefor as commission ten cents per ton, but further alleging that such coal was delivered under a special contract as follows: That prior to November 25, 1895, the Harris & McCormick Company (hereafter referred to as the "company") was a corporation doing a commission business in Butte; that nearly all the capital stock of such company was owned by the plaintiff and defendant Harris; that such company was the agent of Johnson & McCarthy for selling coal in Butte, and on November 25, 1895, was indebted to Johnson & McCarthy in the sum of $1,215; that on this last-mentioned date such company made an assignment for the benefit of its creditors, and made Johnson & McCarthy second preferred creditors for the sum of $1,550; that immediately thereafter the partnership of Harris & McCormick was formed, and such firm made application to Johnson & McCarthy for the agency at Butte to sell coal for them; that thereupon an agreement was entered into, by the terms of which the firm was constituted the agent at Butte for Johnson & McCarthy in selling coal, for which such firm should receive as commission ten cents per ton; that such agency was created in consideration that the firm should assume and pay the indebtedness of the company to Johnson & McCarthy, and that all receipts from the sale of coal made by the firm should be turned over to Johnson & McCarthy, and that every month thereafter credit on the former account of the company should be made of the commissions earned the previous month by the firm; that such agreement was carried out until February 1, 1896, when the full amount of $1,173. 90 so earned by the firm had been applied to the liquidation of the former indebtedness of the company, and the balance of said indebtedness was thereupon paid by Harris and the agency of the firm for Johnson & McCarthy terminated.

The answer denies any collusion or connivance on the part of Johnson & McCarthy and Harris, or any intent to defraud McCormick. The defendant Harris also filed a separate answer

of like import as the answer of Johnson & McCarthy, and also denied that he had ever refused to join the plaintiff in bringing this action. The reply denies the existence of the special contract mentioned in the answers.

The cause was tried to the court without a jury. The court found the issues for the defendants, and entered a judgment in their favor for costs, from which judgment and an order refusing him a new trial the plaintiff appealed.

The specifications relied upon are insufficiency of the evidence to support the findings, decision and order of the court, and errors in law occurring at the trial and excepted to by plaintiff. Numerous specifications are made of the insufficiency of the evidence to support the decision of the court, but they may be considered together.

The answer of the defendants Johnson & McCarthy amounts to a confession and avoidance. There is no question but what the full amount of $1,173.90 was earned by the firm and is due to it, unless the same has been paid; and there is no claim whatever that any part of it has been paid, except in the manner set forth in the answers. If the contract mentioned by the defendants was actually made and executed as alleged in the answers, then the firm was fully paid prior to the commencement of this action. If such contract was not made, then plaintiff should have prevailed, assuming that he has the right to maintain this action, which question is not considered, but reserved.

It is earnestly contended by appellant that the special contract alleged in the answers, if ever entered into at all, was invalid under the statute of frauds (Subdivision 2, Section 2185, Civil Code), which provides: "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: * * * (2) A special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in Section 3612 of this Code." The contention made is that the contract as alleged is clearly a special promise on the part of the firm of Harris & McCormick to answer for the antecedent

debt of the Harris & McCormick Company, a corporation, and, as the evidence shows that such contract was not in writing, therefore there was no evidence to support any legal defense which defendants made. However, Subdivision 2 of Section 2185, above, is subject to the qualifications imposed by Section 3612 of the same Code. This latter section, among other things, provides: "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: * * * (3) Where the promise being for an antecedent obligation of another * * * is made upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person."

While there is considerable conflict in the authorities respecting the proper construction to be given to statutes of this character, the decided weight of authority seems to uphold this rule, namely: When the original debt was antecedently contracted and subsists, the promise to pay it is original if founded upon a new consideration moving to the promisor, and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor. (Brown on Statute of Frauds, Sec. 214a; *White* v. *Rintoul,* 108 N. Y. 222, 15 N. E. 318.)

In *Emerson* v. *Slater,* 22 How. (U. S.) 28, 16 L. Ed. 360, the same rule, in effect, is thus stated: "Cases arise which also fall within the statute, where the collateral agreement is subsequent to the execution of the debt, and was not the inducement to it, on the ground that the subsisting liability was the foundation of the promise on the part of the defendant, without any other direct and separate consideration moving between the parties. But whenever the main purpose and object of the promisor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise

to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." To the same effect are the following authorities: 2 Current Law, 109; *Pratt v. Fishwild,* 121 Iowa, 642, 96 N. W. 1089; *Lookout Mt. R. Co.* v. *Houston,* 85 Tenn. 224, 2 S. W. 36, and cases cited; *Gilmore* v. *Skookum Box Factory,* 20 Wash. 703, 56 Pac. 934; *Crawford* v. *Edison,* 45 Ohio St. 239, 13 N. E. 80; *Simpson* v. *Carr,* 25 Ky. Law Rep. 849, 76 S. W. 346; 1 Reed on Statute of Frauds, Sec. 73.

The question of novation is not involved. If the promisor is to receive some substantial benefit—a benefit which he did not enjoy before—for which his promise is exchanged, it is wholly immaterial whether the original debtor remains liable or not. (*Calkins* v. *Chandler,* 36 Mich. 320, 24 Am. Rep. 593, and the cases cited; *Gilmore* v. *Skookum Box Factory, supra.*) The rule has for its basis the new consideration, and the promise founded upon it creates a primary liability on the part of the promisor.

Applying these principles, then, to the facts of this case, we observe that, if the special contract pleaded in the answers was ever made at all, it had for its consideration the agency for Johnson & McCarthy at Butte to handle their coal in that market for them, conferred upon the firm; an agency which the testimony shows was worth to such firm about $750 per month. In other words, if we accept the version of the contract as given by Johnson and Harris, it is apparent that the firm would not have been constituted the agent for Johnson & McCarthy unless that firm had assumed and agreed to pay the prior existing debt of the company; and their version further is that, as an inducement to Johnson & McCarthy to constitute the firm their agent, such firm agreed to assume and pay the debt of the company. We are of the opinion that, if the contract as pleaded in the answers was actually entered into, the promise to pay the prior debt of the company became an original obligation on the part of the firm, enforceable, though not in writing.

Was the contract pleaded in the answers actually entered into? J. A. Johnson, one member of the firm of Johnson & McCarthy, testified, in effect, that he was in Butte soon after the assignment was made by the company; that he saw both Harris and McCormick; that they solicited the agency in handling the coal for Johnson & McCarthy at Butte; that he told them that his firm would not take under the assignment, as he did not know whether there would be anything for them; that he further told them that the only condition upon which they could have the agency was that they became responsible for the debt of the company and allow Johnson & McCarthy to retain the commissions earned until the debt was paid; that they agreed to this, and carried out the agreement, and it was some months afterwards before there was any trouble about it. M. C. Harris, who was the copartner with plaintiff, testified to the same effect; and one Fitz Butler, who was bookkeeper for the company, assignee of that company, and also the bookkeeper for the firm, testified that McCormick told him that Mr. Johnson had said to him (McCormick) again and again that he wanted him to remember that the partnership was to assume the indebtedness of the corporation.

The plaintiff contradicted the evidence of these witnesses on behalf of the defendants, but offered no other evidence in disputation of their testimony except some letters which he had received from McCarthy, one of the defendants—one making inquiry as to what had been done under the assignment, and in the others agreeing to pay McCormick what he claimed of the commissions if McCormick would secure an order therefor from Harris. These letters are explained by McCarthy by saying that the only knowledge he had of the terms of the agreement was what he received from Johnson, his copartner; that he wrote the letters above referred to without consulting Johnson; that he charged the partnership with the debt of the corporation, and every month thereafter credited the partnership with the commissions which they had earned the previous month; that they were willing to pay McCormick the amount which he claimed

out of the commission if he secured an order from Harris for them to do so.

In the light of this testimony the court found the issues for the defendants. In other words, the court found that the special contract as pleaded had been entered into and had been fully carried out. We are of the opinion that the evidence is abundant to sustain the finding of the court in this regard.

Was there evidence sufficient to show that the company owed Johnson & McCarthy at least $1,173.90? The books of the company, kept by Butler, showed an indebtedness on October 31st of $1,458.74, and on November 30th, $1,147.76. The witness Harris testified that at the time the assignment was made the corporation owed Johnson & McCarthy about $1,200. McCarthy testified, in effect, that the commissions earned by the firm, which the pleadings admit amounted to $1,173.90, did not entirely liquidate the prior debt of the company; and that a small balance was left on February 1, 1896, which was subsequently paid by Harris.

The exact amount of such indebtedness was immaterial so long as it equaled or exceeded the amount of the commissions earned by the firm; and the general finding of the court in favor of the defendants amounted to a specific finding that such indebtedness was at least $1,173.90, and in support of this finding the evidence appears ample.

It is contended that the evidence is insufficient to show that Johnson & McCarthy did not receive any benefit from the assignment of the company. With reference to this the witness Harris testified: "Johnson came over immediately after the assignment. * * * He said he would not have anything to do with the assignment, and, if we wanted the agency, we would have to let him keep the commissions until the old debt was paid." The defendant Johnson testified that his firm received nothing whatever from the assignee of the company. Butler, the assignee, testified with reference to this matter as follows:

"Q. Can you testify at this time whether or not the firm of Johnson & McCarthy ever received anything from you as as-

signee of the old company? A. No, sir; they did not. I know they did not." In the absence of any evidence to contradict these statements, it would seem that the court had abundance of evidence to satisfy it that nothing whatever was paid by the assignee to the defendants Johnson & McCarthy.

When the plaintiff was testifying in his own behalf he was asked this question: "Q. Did you ever authorize Mr. Harris to make an agreement for your partnership to assume the indebtedness of the corporation?" An objection to this question was interposed on the ground that it was immaterial and incompetent, which objection was sustained, and the plaintiff excepted. The theory of the defendants was that the agreement by which the firm had assumed and agreed to pay the prior debt of the company, was made in Butte between Johnson, acting for the firm of Johnson & McCarthy on the one part, and Harris and McCormick. Both Johnson and Harris testified that McCormick was present at the time and participated in making the agreement. Butler testified that McCormick afterwards told him the terms of the contract under which they secured the agency for Johnson & McCarthy. These terms, as testified to by these witnesses, are the terms set forth in the answers. There is no claim on the part of the defendants that the contract was made with Harris alone, representing the partnership of Harris & McCormick, and therefore it was entirely immaterial, upon this theory of the case, whether McCormick had ever authorized Mr. Harris to enter into such an agreement or not. Either McCormick participated in making the agreement or the agreement was never made.

On cross-examination the witness McCormick was asked: "Q. At the time that you were in the coal business, right after the failure of the corporation, how did your account stand with Johnson & McCarthy?" An objection was interposed to this question, the objection was overruled, and error is assigned. In view of the fact that the witness answered, "I don't know," it is apparent that, if the court committed error in permitting the question to be answered, the error is without prejudice.

While the defendant Johnson was on the witness stand he was asked by his counsel this question: "Q. What, if anything, did your firm ever receive from the assignee of the corporation known as Harris & McCormick Company, which made its assignment to F. H. Butler, as assignee, on or about the 25th of November, 1895 ?" to which counsel for plaintiff objected on the ground that it was immaterial, irrelevant and incompetent under the pleadings of this case. The objection was overruled, and exception noted. The witness answered, "Nothing." The pleadings in this case show that Johnson & McCarthy had been made a second preferred creditor of the company. The plaintiff himself admits that this preference was made without the knowledge of Johnson and McCarthy, or either of them. Since the defendants Johnson and McCarthy are claiming in their answer that they had fully paid all commissions earned by the firm under the special contract claimed by them to have been made for the assumption and payment of the debt of the company, and that such contract had been carried out according to its terms as understood by them, they deemed it necessary to show that no part of that indebtedness had been liquidated otherwise. Certainly no injury could be done to the plaintiff by reason of this character of testimony; for, after all, without any reference to the assignment, the plaintiff was entitled to recover unless he had been fully paid, and the only pretense made that he had been paid was that the payment was made under the special contract pleaded in the answers.

While the defendant Harris was on the witness stand testifying with reference to the agency which he and his partner had for handling coal for Johnson & McCarthy, he was asked, with reference to that business, this question: "Q. About how much would that business average ?" To this an objection was interposed that it was immaterial and incompetent. The objection was overruled, and an exception noted. The witness answered, "About $750 per month." As heretofore said, the only defense made to the plaintiff's cause of action was that the plaintiff and his copartner, Harris, had agreed to assume and pay the debt

of the company. It was, therefore, necessary, in presenting this theory of the case for the defendants, to show that the contract which they entered into with the firm was not within the inhibition of the statute of frauds, but, on the contrary, that they parted with value, and that such firm acquired a valuable concession in being constituted the agent for Johnson & McCarthy for handling their coal in the city of Butte, and therefore the contract comes within the purview of Subdivision 3 of Section 3612, above, and that it was, therefore, a valid contract, and need not be in writing. Upon this theory the evidence was properly admitted.

We are of the opinion that the evidence is amply sufficient to justify the finding and decision of the court, and that the record discloses no prejudicial error. The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Milburn concurs.

Mr. Chief Justice Brantly, not having heard the argument, takes no part in the foregoing decision.