BENNIGHOFF, APPELLANT, *v.* ROBBINS, EXECUTOR, RESPONDENT.

(No. 3,782.)

(Submitted June 6, 1917, Decided July 2, 1917.)

[166 Pac. 687.]

*Statute of Frauds—Primary and Collateral Obligation—Payment by Volunteer—Evidence.*

Statute of Frauds—Evidence—Sufficiency.

1. In an action against a decedent's estate to recover amounts advanced on account of a corporation, evidence *held* to justify a finding that decedent and plaintiff, while directors and stockholders of the company, before disbursement of any funds, orally agreed that they would finance the company and personally advance funds to meet its obligations, and that, if either failed to obtain reimbursement from

the company, there should be an accounting between them, each promising to pay a half of the sums advanced; *held* further, that the agreement was on its face one within the statute of frauds, because oral.

Same—Primary and Collateral Obligation.

2. Plaintiff's advances having been noted upon the company's books as its liability, and it formally executing to him a note, which, whether intended as a liquidation or not, operated as an acknowledgment and acceptance of what he had done in advancing funds, there was a primary obligation between plaintiff and the company, to which the agreement between plaintiff and decedent was collateral.

Same—Payment by Volunteer.

3. Under the circumstances noted above, and the further one that plaintiff was looked to to keep the company on its feet, payments made by him were those of a mere volunteer, for which it was not liable.

Same—Obligation Must be Legal, not Moral.

4. The consideration which, under section 5660, subdivision 3, will convert a promise to answer for the obligation of a third person into an original obligation of the promisor, so as to take it out of the statute of frauds, must be one tangible at law—a legal, pecuniary benefit, rather than a moral obligation.

Same—Taking Promise Out of Statute—Exclusive Credit to Promisor.

5. Where two directors of a corporation in need of financial aid orally agreed with each other that each would answer to the other for advances made by each to it, provided things could not be so arranged that both should be made whole by the corporation, neither became a principal debtor to the other and the agreement was not taken out of the statute of frauds (sec. 5660, subd. 2, Rev. Codes), since credit was not given to the promisor exclusively.

[As to what is a contract to answer for or pay the debt of another within the meaning of the statute of frauds, see note in 126 Am. St. Rep. 487.]

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by George F. Bennighoff against E. L. Robbins, as executor of the estate of John D. Losekamp, deceased. From a judgment for defendant, and an order denying plaintiff's motion for new trial, plaintiff appeals. Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Collins, Campbell & Wood,* for Appellant.

The agreement in suit is not affected by the statute of frauds for the following reasons:

1. The elements of an agreement to answer for the debt, default or miscarriage of another are lacking.

The rule is stated in Browne on Statute of Frauds, paragraph 188, as follows: "The statute applies to promises to pay the debt of another; and this is construed by the courts of both countries to mean the debt of some person.other than the immediate parties to the contract of guaranty and owed to one of those parties." (See, also, *Tighe* v. *Morrison*, 116 N. Y. 263, 5 L. R. A. 617, 22 N. E. 164; *Kilbride* v. *Moss*, 113 Cal. 432, 54 Am. St. Rep. 361, 45 Pac. 812; *Resseter* v. *Waterman*, 151 Ill. 169, 37 N. E. 875; *Enos* v. *Anderson*, 40 Colo. 395, 15 L. R. A. (n. s.) 1087, 93 Pac. 475; 20 Cyc. 160, 162; *Donovan-McCormick Co.* v. *Sparr*, 34 Mont. 237, 85 Pac. 1029.)

2. The agreement, if collateral to the obligation of a third person, is governed by paragraph 3, section 5660, Revised Codes. Where the leading purpose of a person agreeing to pay the debt of another is to gain some advantage or to promote some purpose or interest of his own, and there is a consideration beneficial to the promisor, the contract is valid, though not in writing. (*Carothers* v. *Connolly*, 1 Mont. 433; *McCormick* v. *Johnson*, 31 Mont. 266, 78 Pac. 500; *Davis* v. *Patrick*, 141 U. S. 479, 35 L. Ed. 826, 12 Sup. Ct. Rep. 58; *Trulock* v. *Blair*, 8 Okl. 345, 58 Pac. 1097; *Peyson* v. *Conniff*, 32 Neb. 269, 49 N. W. 340; *Burr* v. *Cross*, 3 Cal. App. 414, 86 Pac. 824; *Grand Forks Lumber & Coal Co.* v. *Tourtelot*, 7 N. D. 587, 75 N. W. 901; *White* v. *Rintoul*, 108 N. Y. 222, 15 N. E. 318; *Choate* v. *Hoogstraat*, 105 Fed. 713, 46 C. C. A. 174; *Mine & Smelter Supply Co.* v. *Stockgrowers' Bank*, 173 Fed. 859, 98 C. C. A. 229; *Clay* v. *Walton*, 9 Cal. 328; Browne on Statute of Frauds, par. 214A.)

3. The agreement, if collateral to the obligation of a third person, is governed by paragraph 2, section 5660, Revised Codes. This court in *McGowan Commercial Co.* v. *Midland Coal & Lumber Co.*, 41 Mont. 211, 225, 108 Pac. 655, has approved the construction given an identical Code section in South Dakota by the supreme court of that state in *Meldrum* v. *Kenefick*, 15 S. D. 370, 89 N. W. 863. It is as clear from the record here as in the South Dakota case, *supra*, that "From the plaintiff's evidence he relied upon the agreement of the defendant (Losekamp) to

pay him.'' Therefore, the agreement is an original undertaking and valid, though not in writing.

*Messrs. Johnston & Coleman,* for Respondent.

The cases cited by counsel in the first subdivision of their brief, *viz.: Tighe* v. *Morrison,* 116 N. Y. 263, 5 L. R. A. 617, 22 N. E. 164; *Resseter* v. *Waterman,* 151 Ill. 169, 37 N. E. 875; *Kilbride* v. *Moss,* 113 Cal. 432, 54 Am. St. Rep. 361, 45 Pac. 812; *Enos* v. *Anderson,* 40 Colo. 395, 15 L. R. A. (n. s.) 1087, 93 Pac. 475, proceed upon the theory that, in order to bring a promise to answer for the "debt, default or miscarriage" of a third person within the statute, the third person must be under a legal liability to the person to whom the promise is made. By these decisions these courts give effect only to the words "debt," and "default," and not to the word "miscarriage." The words "debt" and "default" do import an obligation enforceable at law; but such is not the common acceptation of the word "miscarriage." (*Gansey* v. *Orr,* 173 Mo. 532, 73 S. W. 477; *Brown* v. *Adams,* 1 Stew. (Ala.) 51, 18 Am. Dec. 36; *Ferrell* v. *Maxwell,* 28 Ohio St. 383, 22 Am. Rep. 393; *May* v. *Williams,* 61 Miss. 125, 48 Am. Rep. 80; *Bissig* v. *Britton,* 59 Mo. 204, 21 Am. Rep. 379; *Nugent* v. *Wolfe,* 111 Pa. St. 471, 56 Am. Rep. 291, 4 Atl. 15; *Baker* v. *Morris,* 33 Kan. 580, 7 Pac. 267.) While there appears to be a clear conflict of authority in the decisions of the various courts on this point, we believe the reasoning of the Missouri court to be more convincing than that appearing in the decisions referred to by counsel, and we therefore contend that this court should adopt what we believe to be the more reasonable position.

Was Mr. Bennighoff acting as a mere volunteer when he paid the debts of the corporation? If he was, this case would be brought within the doctrine of *Donovon-McCormick Co.* v. *Sparr,* 34 Mont. 237, 85 Pac. 1029; there would be no obligation resting on the corporation to repay Mr. Bennighoff the amount of his advances, and, if this court should adopt the reasoning of the New York, Illinois and California courts, Mr. Losekamp

would be liable as on an original contract. Considering the nature of Mr. Bennighoff's connection with the railway company, we do not believe any argument necessary to establish the fact that the payments made by him to the creditors of the company were neither made without reasonable cause nor officiously. "As in the case of other trustees, if the directors of a corporation necessarily advance their own money to save the properties of the corporation, they will be entitled to indemnity therefor out of the funds of the company, and in preference to the right to dividends of the holders of the preferred stock." (10 Cyc. 813; Clark & Marshall on Corporations, sec. 762; Thompson on Corporations, sec. 2838; *In re Gouverneur Publishing Co.* (D. C.), 168 Fed. 113; *Martin* v. *Victor Mill & Min. Co.,* 19 Nev. 180, 8 Pac. 161; *Sutton* v. *Farmers' Union Warehouse Co.,* 11 Ga. App. 338, 75 S. E. 336; *Atlantic Suburban Gas & Fuel Co.* v. *Johnson,* 81 N. J. Eq. 514, 88 Atl. 163; *O'Rourke* v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965; *Tatem* v. *Eglanol Mining Co.,* 42 Mont. 475, 113 Pac. 295.)

The mere fact that a promisor was a heavy stockholder in a corporation and interested vitally in the success of the corporation would not constitute a sufficient consideration to take his oral promise to answer for the debt of the corporation out of the statute. (*Goldie Klenert Dist. Co.* v. *Bothwell,* 67 Wash. 264, Ann. Cas. 1913D, 849, 121 Pac. 60; *Turner* v. *Lyles,* 68 S. C. 392, 48 S. E. 301; *Putnam Mach. Co.* v. *Cann,* 173 Pa. St. 392, 34 Atl. 67.) Every person who makes a promise to answer for the debt of another presumably has some reason, sentimental, moral or pecuniary; but in order to take the promise out of the statute, the consideration must be an immediate, pecuniary benefit.

MR. JUSTICE SANNER delivered the opinion of the court.

In this case the trial court found as follows:

"I. That John D. Losekamp, deceased, in his lifetime, and the plaintiff, while each of said persons were directors and stockholders of the hereinafter named corporation, and prior to the

disbursement of any funds thereunder, entered into an oral agreement between themselves that they would finance the Eastern Montana Electric Railway Company, personally advancing sufficient funds to meet and discharge its obligations, then existing or which thereafter might be incurred, and, in the event of either of said parties failing to obtain reimbursement from the company, there was to be an accounting had between the parties, each promising to pay one-half of the sums so advanced and unpaid.

"II. That said parties performed the terms of said agreement, in part by indorsing notes given in the name of the company, and in part by advancing to and for the use of the corporation from their individual funds.

"III. The plaintiff, being in funds, individually advanced the said company the sum of $11,510.10. Of said sum plaintiff deposited $5,482.43 to the bank credit of the company, and the remainder is represented by payment and discharge of obligations of the corporation, including personal expenses.

"IV. That under the terms of said agreement the said John D. Losekamp, in his lifetime, of his individual funds, advanced to and paid for the benefit of said company the sum of $1,254.10.

"V. That the plaintiff and the said Losekamp, deceased, never had an accounting or settlement between them for the moneys so advanced, and plaintiff presented his claim for the full amount advanced by him, with accrued interest, as set forth in the complaint, to the defendant, as executor of the last will of said John D. Losekamp, deceased. Defendant indorsed his allowance thereon in the sum of $1,769.60, with interest, being one-half of the principal and interest of two notes indorsed by plaintiff and said John D. Losekamp, deceased, for the use and benefit of said company, and subsequently paid by the plaintiff.

"VI. That the said Eastern Montana Electric Railway Company executed and delivered its promissory note in writing to the plaintiff at his request for all advances made by him."

Upon these findings the court concluded as a matter of law: "That the moneys advanced and expended by plaintiff were primarily expended on the credit of the corporation, and said John

D. Losekamp, deceased, was to become liable only in the event of the inability of the company to repay. That the agreement between plaintiff and said John D. Losekamp, deceased, is void by reason of the statute of frauds. That plaintiff is entitled to a judgment against defendant in the sum of $1,769.60, with accruing interest, as provided in said notes, from their dates respectively: That each party shall pay his own costs." Judgment was entered accordingly, and from it, as well as from an order denying his motion for a new trial, plaintiff appealed.

Reversal is sought upon the grounds that the findings, conclusions and judgment are, and each is, unwarranted by the evidence. The argument is that the evidence shows the agreement in suit to have been one not affected by the statute of frauds, because (1) the elements of an agreement to answer for the debt, default or miscarriage of another are lacking; (2) the agreement, if collateral to the obligations of a third person, is covered by subdivision 3, section 5660, Revised Codes; (3) the agreement, if collateral to the obligations of a third person, is covered by subdivision 2, section 5660, Revised Codes.

I. The plaintiff testified: "The company was organized in 1909; in 1910 I went to Europe. When I came back from [1] Europe on October 4th it seems as though everybody was running after me for money. * * * Four or five days after this I went up to Mr. Losekamp's store. He says: 'George, we are in a pretty nice fix.' I says: 'How is this?' He says: 'All hollering money, and there has nothing been paid since you are gone. They all say, when you come back, we will straighten it out.' He says: 'I will tell you, as far as you and I are concerned, we cannot have our good name stained by reason of a few paltry thousand dollars.' He says: 'It looks as though we have to stand this.' I says: 'Not me; I didn't start this ball rolling.' So John says: 'You think it over.' We had another talk next day. He says: 'I will tell you, we cannot stand this, we are too old,' he says, 'and what is money? Money is nothing but to be used. We have to see this thing through.' He says: 'I go half and half.' I says: 'Yes?' I says then; 'Come

across.' * * * He said: 'I haven't got it.' I said: 'I haven't either. He said: 'Borrow it.' I said: 'Not me.' He says: 'That is the only way we can do.' So finally I said: 'Well, all right; I will pay them payments off, which is in the neighborhood of $2,700 or $2,800.' I advanced the money. In order to avoid paying percentage to the bank, I advanced it out of my own funds. So that advancing kept on whenever there was money needed; there was no questions asked; I was to pay. Being treasurer, I advanced the money as stipulated in the claim here, which Mr. Losekamp actually brought me into the game. That is the proposition; he bears half and I bear half, provided the thing goes by the wayside. When I say we were each to pay half, I have reference to the money I advanced. * * * I don't know whether Mr. Losekamp and I were stockholders and directors from the time the company was formed. I know I was one of the originators. I was one of the original stockholders and directors. I am still a stockholder. * * * I had this conversation with Mr. Losekamp between the 10th and 15th of October. * * * When I had my first conversation with Mr. Losekamp with reference to paying the bills that had already been incurred by the company, he didn't exactly say that he felt it to be a disgrace to me and to him to be connected with a company that hadn't paid its bills. He was talking to me about the outstanding bills. There was so much against the company, and he says: 'I helped the thing along, and I held it above water, so it wouldn't drown.' 'Now,' he says: 'George, there is no use talking,' he says, 'we are getting too old in this world to have anything hanging over us of dishonesty, or of not paying any bills which we are connected with.' I told him I agreed with his views. I told him there was others. He says: 'What do you think of it?' I told him I would consider it. The next day or two afterward I come up there. He told me: 'Well, not here; them people are running in the store wanting their money, the engineering corps and anything pertaining with it.' He says: 'I am about wore out.' 'Now,' he says, 'I will tell you; let's borrow some money and fix the thing up, and pay the ex-

penses; and you bear half and I bear the other half.' And I told him, I says: 'Wasn't in a borrowing mind.' He says: 'I ain't got a cent; I haven't got a cent, and you know I haven't. That oil deal takes all the money I have got.' He says: 'Borrow it.' I says: 'No; I am not in a borrowing mood.' He said: 'If you got it, advance it, and let's get through with this thing and finish it; I pay half and you pay half; is that satisfactory?' I didn't yield right away, but I thought the best way was to pay it out and be done with it, and not have everybody hollering after me: 'You owe me this much that you were entitled to pay.' So that is the way it came about. Q. When was it, Mr. Bennighoff, he said to you, 'I will pay my half provided the thing goes by the wayside?' A. That was in the first talk—in the first talk, the first conversation, he says: 'What will it amount to anyway; it won't amount to more than $6,000, $7,000, or $8,000.' He says: 'You can stand it.' I says: 'You may, but I don't. You can stand it; that is the biggest we could get in you know.' * * * I thought to myself, as long as he was a gamester, I didn't want to stand behind any way, and I told him I would submit to the proposition. I told him: 'All right, we will stay.' That wasn't the time he said he would pay his half, provided it would go by the wayside. He didn't say he would pay his half provided it go by the wayside. He said: 'Provided this thing goes off, and never comes through, I pay my half which you advance. I pay it; I ought to pay you now.' He said that the first, second, third, and fourth conversations.'' We think this justifies the first finding above quoted, and authorizes the view that the plaintiff and Mr. Losekamp agreed each to answer to the other for any funds paid out on account of the railway company, if that company should itself fail to properly respond— on its face an agreement which, because oral, is within the statute of frauds. It does not suffice to insist, with counsel, that another and different interpretation, based upon the plaintiff's obvious limitations in the use of English, was possible; the trial judge, who heard the testimony, was in better position to understand it than we are.

The point is made, however, that there is no evidence of any
[2]    direction or request by the Eastern Montana Electric Rail-
way Company for the payment of the obligations taken up by
the plaintiff; that such payment was, so far as the company is
concerned, the act of a mere volunteer, for which the company
is not liable; that, this being so, there was no primary obliga-
tion as between the plaintiff and the company to which the agree-
ment of the plaintiff and Mr. Losekamp could be collateral, and
therefore the latter agreement was an original one, and not
within the statute of frauds. This reasoning, if valid, could
have no application to the moneys deposited in bank to the credit
of the company and used by it, nor to the moneys paid out upon
the notes of the company, indorsed by the plaintiff and Lose-
kamp; the field of its operation would be confined to the com-
paratively small amount representing the difference between
what the plaintiff paid upon obligations of the company, other
than notes, and the sum similarly paid by Mr. Losekamp. The
reasoning, however, is not valid. The plaintiff was a stockholder
and officer of the company; he was keenly and justly interested
in its success; his advances were noted upon the books as com-
pany liabilities; he was looked to in large measure to keep it on
its feet; and it formally executed to him a note which, whether
intended as a liquidation or not, operated as an acknowledgment
and acceptance of what he had done. In these circumstances,
the advances made cannot be said to stand without any promise,
express or implied, to repay. (*O'Rourke* v. *Grand Opera House
Co.*, 47 Mont. 459, 133 Pac. 965; *In re Gouverneur Pub. Co.*
(D. C.), 168 Fed. 113.) Nor can they be held acts of an offi-
[3]    cious volunteer, within the rule recognized by this court in
*Smith* v. *Perham*, 33 Mont. 309, 83 Pac. 492, *Donovan-McCor-
mick Co.* v. *Sparr*, 34 Mont. 237, 85 Pac. 1029, and *Penwell* v.
*Flickinger*, 46 Mont. 526, 129 Pac. 323.

II.    The contention that the agreement between plaintiff and
Losekamp is covered by subdivision 3 of section 5660, Revised
Codes, is based upon the proposition that it was made at the in-
stance of Losekamp to subserve an interest or purpose of his

own, to-wit, the conservation of his credit. *Carothers* v. *Connolly*, 1 Mont. 433, *McCormick* v. *Johnson*, 31 Mont. 266, 78 Pac. 500, and authorities from other jurisdictions are cited; but the contention cannot be upheld for these reasons: The record does not command the inference that conservation of Losekamp's credit was the principal and primary object in mind, but rather that the object in mind was to see that the obligations of the company were met, and thus incidentally relieve the parties from the imputation of having been connected with a concern which could not or would not pay its honest debts. The motive was **[4]** to satisfy a highly commendable sentiment; but the consideration which, under subdivision 3 of section 5660, will convert a promise to answer for the obligation of a third person into an original obligation of the promisor, so as to take it out of the statute of frauds, must be one tangible at law, a legal, pecuniary benefit, rather than a moral or sentimental purpose. All the cases cited by plaintiff, so far as they are pertinent, illustrate this, and the authorities generally are in accord upon the subject. (20 Cyc. 191; *White* v. *Rintoul*, 108 N. Y. 222, 15 N. E. 318; *Fletcher* v. *Puckett* (Tex. Civ. App.), 170 S. W. 831; *Clapp* v. *Webb*, 52 Wis. 638, 9 N. W. 796; *Goldie-Klenert Dist. Co.* v. *Bothwell*, 67 Wash. 264, Ann. Cas. 1913D, 849, 121 Pac. 60.)

III. By subdivision 2 of section 5660 it is made the rule that: **[5]** "A promise to answer for the obligation of another * * * is deemed an original obligation of the promisor, * * * where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety." It is contended that under this provision the promise of Losekamp was an original obligation, because the plaintiff looked to Losekamp for payment, or, as was said in *McGowan Com. Co.* v. *Midland C. etc. Co.*, 41 Mont. 211, 225, 108 Pac. 655, Losekamp was the one to whom "credit was given." We took occasion in the later case of *Fortman* v. *Leggerini*, 51 Mont. 238, 152 Pac. 33, to point

out, however, that: "It is requisite that credit should be given exclusively to the promisor; if any credit be given to him for whose benefit the promise is made, the promisor is not liable unless his promise is in writing, and this is so, although the collateral undertaking may have been the principal inducement." Let it be conceded, therefore, that Losekamp's promise was the principal inducement for the advances made by the plaintiff; it is nevertheless clear that credit was not given to him exclusively, for the plaintiff himself says the proposition was, "He bears half and I bear half, provided the thing goes by the wayside"; or, "He [Losekamp] says, 'Provided this thing goes off, and never comes through, I pay my half which you advance.'" This means: If matters could not be so arranged that both the plaintiff and Losekamp should be made whole by the company, then they were to answer to each other. How such an agreement would make either of them the principal debtor to the other, with the company standing as surety, is not apparent to us. .

On the whole case we are convinced that, while a different interpretation of the testimony might have been possible and thus have commanded a different result, the record does not present a situation with which we ought to interfere. The judgment and order appealed from are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.